# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 17, 2013

No. 12-41040

Lyle W. Cayce
Clerk

JOEL BRADBERRY,

Plaintiff-Appellant

v.

JEFFERSON COUNTY, TEXAS,

Defendant-Appellee

Appeal from the United States District Court
for the Eastern District of Texas

Before GARZA, SOUTHWICK, and HAYNES, Circuit Judges.

LESLIE H. SOUTHWICK, Circuit Judge:

Joel Bradberry brought suit against his former employer, the Jefferson County Sheriff's Department. He alleged that after fulfilling his two-week training obligation with the United States Army Reserve, he was terminated in violation of the Uniformed Services Employment and Reemployment Rights Act ("USERRA"), 38 U.S.C. §§ 4301-4335, and TEXAS GOVERNMENT CODE §§ 613.001-613.023. Bradberry moved for partial summary judgment on the ground that Jefferson County was collaterally estopped from relitigating facts determined in a state administrative proceeding. The district court denied the motion but granted Bradberry's request to certify its order for appeal pursuant to 28 U.S.C. § 1292(b). We agreed to take the appeal. We AFFIRM.

No. 12-41040

## FACTS AND PROCEDURAL HISTORY

Bradberry was employed by Jefferson County as a corrections officer from February 2007 to December 2008. During that time, he also was a member of the United States Army Reserve. Bradberry was ordered to report for his annual Reserve training from September 1 through September 12, 2008, and was scheduled to return to civilian work on September 13. He provided a copy of his orders to Jefferson County prior to reporting for military duty. Bradberry did not report back to work until the evening of September 16, missing scheduled work shifts on September 13 and 14.

According to Bradberry, as a result of Hurricane Ike's imminent landfall on September 13, Army Captain Dwayne Rose orally extended his orders and required him to go to Abilene, Texas, and remain there until released. Bradberry contacted Jefferson County on September 12 to report that he would not be at work the next day because of his new military orders. Bradberry was released from duty at 7:00 a.m. on September 15, and he reported to work the next day. He was scheduled for a midnight shift on September 17.

Jefferson County ordered Bradberry to provide documentation about the extension of his military duty to include September 13-16, the dates not covered by his original orders. Although Bradberry provided memoranda from his commanding officers, he did not provide the type of documentation the County requested. The County initiated an internal investigation into Bradberry's conduct, then terminated him in December 2008.

The County's explanation of the basis for Bradberry's termination was in an F-5 Report of Separation of Licensee. A Texas law enforcement agency is required to file an F-5 Report on all officers when they leave employment with the agency. The report is filed with the Texas Commission on Law Enforcement Officers Standards and Education ("TCLEOSE"). The F-5 Report describes the circumstances under which an officer left the agency, and whether he was

No. 12-41040

honorably discharged, generally discharged, or dishonorably discharged. TEX. OCC. CODE § 1701.452. The F-5 Report becomes part of the officer's permanent TCLEOSE record. If the officer seeks employment with another law enforcement agency, the agency is required to review employment termination reports before hiring the officer. 37 TEX. ADMIN. CODE § 217.7(a)(1).

Bradberry's F-5 Report categorized his discharge as "dishonorable," saying he was "terminated for an administrative violation(s) of truthfulness or insubordination." An explanation of separation attached to the report stated that Bradberry was insubordinate, absent without leave, and failed to answer questions truthfully or provide documentation and relevant statements to the Sheriff or any supervisor in the departmental investigation when ordered.

An officer who receives an F-5 Report "may contest information contained in the report" by filing a petition with the TCLEOSE, which then refers the matter to the State Office of Administrative Hearings. TEX. OCC. CODE § 1701.4525(a).[1] An administrative law judge ("ALJ") will conduct a hearing to determine whether "the alleged misconduct occurred by a preponderance of the evidence . . . . If the alleged misconduct is not supported by a preponderance of the evidence, the administrative law judge shall order the report to be changed." TEX. OCC. CODE § 1701.4525(e). Bradberry utilized these procedures. In September 2009, an ALJ found insufficient evidence and ordered the County and TCLEOSE to amend the F-5 Report "to show that [Bradberry] was terminated at will," and required that the explanation attached to the F-5 Report "should read he was terminated for a disagreement over military leave."

Bradberry had also filed a complaint with the United States Department of Labor. *See* 38 U.S.C. § 4322(a). In March 2009, the assistant director in Texas of the Veterans' Employment and Training Service which is authorized by

---

[1] The TCLEOSE order stated: "The subject of this case is the accuracy of the F-5 report concerning Mr. Bradberry's departure from the Sheriff's Department."

No. 12-41040

Section 4321 of Title 38 to review such complaints, found that the County, "while not intentionally, did violate" Section 4311 (c) by discriminating against him due to his military service. Later in March, the same assistant director sent a memo to the Attorney General, recommending suit be brought against the County for violations of Section 4311 (a), (b), and (c). In August 2009, the Attorney General declined to bring suit, but a declination does not bar a claimant from bringing his own suit. *See* 38 U.S.C. § 4323(a)(3)(C).

In May 2011, Bradberry filed suit in federal court, claiming the County violated USERRA and Chapter 613 of the Texas Government Code when it terminated his employment.[2] His motion for partial summary judgment relied on the doctrine of collateral estoppel to prevent the County from relitigating the ALJ's findings. The court declined to apply collateral estoppel and denied the motion. At Bradberry's request, the court certified the case for interlocutory appeal pursuant to Section 1292(b). The court certified the following questions: (1) whether collateral estoppel bars relitigation of the ALJ's findings in federal court; (2) whether USERRA preempts Chapter 613; and (3) whether a federal district court can exercise subject-matter jurisdiction over a claim under Chapter 613. We granted Bradberry's motion for leave to appeal.

## DISCUSSION

### I. USERRA

The parties on appeal have argued issues that arise under a provision of USERRA that bars employment discrimination on the basis of military service. 38 U.S.C. § 4311(a). They also mention the next section of USERRA, which mandates reemployment of someone "whose absence from a position of employment is necessitated" by military service. 38 U.S.C. § 4312(a). As we will

---

[2] The parties consented to proceed before a magistrate judge pursuant to 28 U.S.C. § 636(c). Because the magistrate judge is a judicial officer of the district court, we will refer to the magistrate judge's rulings as being those of the "district court."

discuss, "reemployment" includes a return to a civilian position after even a brief interruption for military duty.

We step back briefly from the issues of this case to get some perspective on the congressional enactment. USERRA was adopted in 1994 as the first significant modification in protection of veterans' employment rights in 50 years. "Veterans' Law Note," ARMY LAWYER 40 (Dec. 1994). Almost eleven years after the enactment, the Department of Labor adopted regulations pursuant to its statutory authority. 38 U.S.C. § 4331(a); 20 C.F.R. §§ 1002.1-1002.314.

Congress enacted USERRA for three stated purposes: "(1) to encourage noncareer service in the uniformed services" by reducing employment disadvantages; "(2) to minimize the disruption to the lives of persons performing" military service, their employers and others "by providing for the prompt reemployment of such persons upon their completion of such service; and (3) to prohibit discrimination against persons because of their service in the uniformed services." 38 U.S.C. § 4301(a). All three purposes are relevant in this case.

Two separate sections of USERRA apply to this case. One concerns discrimination against those in the military when making employment decisions. 38 U.S.C. § 4311. The other protects the employment of those returning to their former civilian jobs after temporary military duty. § 4312. These sections provide distinct causes of action, as other circuits have earlier held. *See, e.g., Francis v. Booz, Allen & Hamilton, Inc.*, 452 F.3d 299, 303 (4th Cir. 2006). As we will explain, both sections may at times be relevant.

Section 4311 provides that a servicemember "shall not be denied . . . reemployment, retention in employment, . . . or any benefit of employment" because of the person's military service. 38 U.S.C. § 4311(a). An employer will violate this prohibition when "membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor" in an employment decision. § 4311(c)(1).

No. 12-41040

By referring to a "motivating factor," the statute does not textually suggest that military service be the sole factor. A Department of Labor regulation states that a plaintiff "has the burden of proving that a status or activity protected by USERRA was one of the reasons" for the employer's decision. 20 C.F.R. § 1002.22. The employer, though, is not liable under USERRA if it "can prove that the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service." 38 U.S.C. § 4311(c)(1). The regulation elaborates on this provision: "If the individual succeeds in proving that the status or activity protected by USERRA was one of the reasons the employer took action against him or her, the employer has the burden to prove the affirmative defense that it would have taken the action anyway." 20 C.F.R. § 1002.22.[3]

The second section of USERRA relevant for this case provides Reservists the right to reemployment when their "absence from a position of employment is necessitated by reason of service in the uniformed services." 38 U.S.C. § 4312(a). "Reemployment" might suggest that a Reservist has left a position for some lengthy period and is trying to regain a vacant position. It is clear, though, that Section 4312 applies to any military-approved absence from a civilian position. For example, one section applies to situations such as Bradberry's in

---

[3] These regulations were adopted in 2005. Uniformed Services Employment and Reemployment Rights Act of 1994, As Amended, 70 Fed. Reg. 75246 (Dec. 19, 2005). The Department of Labor cited USERRA's legislative history and caselaw interpreting USERRA after its 1994 passage to support the decision to require an employer to prove as an affirmative defense that it would have terminated the employee anyway. *Id.* at 75250. Assigning an employee the burden to prove the prohibited reason was a "motivating factor" in an employment decision, then requiring that a employer prove an affirmative defense that the same decision would have been made without that reason, is an approach modeled on the Supreme Court's interpretation of the evidentiary burdens of Section 10(c) of the National Labor Relations Act. *Id.* (citing *NLRB v. Transp. Mgmt. Corp.*, 462 U.S. 393, 401 (1983)).

6

No. 12-41040

which the military service is less than 31 days. § 4312(e)(1)(A).[4] A Reservist is not automatically entitled to reemployment when returning from military service. The right depends on the servicemember meeting certain obligations:

> [A]ny person whose absence from a position of employment is necessitated by reason of service in the uniformed services shall be entitled to the reemployment rights and benefits and other employment benefits of this chapter *if* —
>
> (1) the person (or an appropriate officer of the uniformed service in which such service is performed) has given advance written or [oral] notice of such service to such person's employer;
>
> (2) [the cumulative length of absences is not more than five years]; and
>
> (3) except as provided in subsection (f), the person reports to, or submits an application for reemployment to, such employer in accordance with the provisions of subsection (e).

§ 4312(a) (emphasis added). Section (3) refers to subsections (e) and (f), the former providing time deadlines and other details for applications for reemployment and the latter providing rules for documenting the service.

A Reservist who meets the criteria for reemployment under Section 4312 must be promptly reemployed following a return from a period of service. 38 U.S.C. § 4312(f)(4). As explained in the provisions just quoted, reemployment is conditioned upon proper advance notice and timely return following the completion of service. *See* § 4312(a)(1), §4312(e)(1)(A)(i).

Obviously, then, a Section 4312 claim is not based, as is Section 4311, on a wide variety of situations that arise in the workplace and are discriminatory against military service. Instead, it protects a civilian employee who has been gone for a period of time on military duty, no matter how brief, and has not been reemployed because of that military service. The Department of Labor

---

[4] When the Department of Labor responded to public comments on its proposed regulations, it applied USERRA protections for reemployment to a Reservist who returned to work from a weekend drill. USERRA, 70 Fed. Reg. at 75259 (discussing *Gordon v. WAWA, Inc.*, 388 F.3d 78 (3d Cir. 2004)).

No. 12-41040

regulations on reemployment set out eligibility requirements for reemployment, including details about the notice to be given the employer about the duty. *See* 20 C.F.R. §§ 1002.85-1002.86. Documentation of the military service may also be demanded by the employer, though reemployment is to occur immediately and the adequacy of documentation reviewed thereafter. 38 U.S.C. § 4312(f); 20 C.F.R. §§ 1002.122-1002.123.

The Department of Labor summarized five general requirements for a servicemember to be eligible for reemployment:

> (1) That the service member be absent from a position of civilian employment by reason of service in the uniformed services;
> (2) That the service member's employer be given advance notice of the service;
> (3) That the service member have five years or less of cumulative service in the uniformed services with respect to a position of employment with a particular employer;
> (4) That the service member return to work or apply for reemployment in a timely manner after conclusion of service; and
> (5) That the service member not have been separated from service with a disqualifying discharge or under other than honorable conditions.

USERRA, 70 Fed. Reg. at 75251; *see also* 20 C.F.R. § 1002.32. Even when a servicemember satisfies these obligations, the employer has statutory defenses to its failure to reemploy. 38 U.S.C. § 4312(d). These are also affirmative defenses for the employer. 20 C.F.R. § 1002.139.

The regulations, on both discrimination and on reemployment rights, make a reasonable interpretation of the evidentiary burdens of those claims and their respective defenses. We apply them to the present dispute.

A Section 4311 claim requires a plaintiff to prove his or her "membership, application for membership, service, application for service, or obligation for service in the uniformed services is a motivating factor in the employer's action"; the employer is then required, if it has asserted the affirmative defense, to prove

8

"the action would have been taken in the absence of such membership, application for membership, service, application for service, or obligation for service."[5]  38 U.S.C. § 4311(c)(1).  For a Section 4312 claim, a plaintiff must, among other things, show that the requirements for notice and documentation have been met.  The employer bears the burden of proof for any affirmative defenses upon which it relies.

Section 4311 discrimination can appear throughout the employment continuum, from consideration for hiring to employee termination.  Section 4312 is much narrower, applying to a return to the civilian workplace after a period of military duty.   Unlike for a Section 4311 claim, an "employee is not required to prove that the employer discriminated against him or her because of the employee's uniformed service in order to be eligible for reemployment."  20 C.F.R. § 1002.33.  Whether reemployment rights exist may not be determinable on the first day a Reservist returns to work.  An "employer is not permitted to delay or deny reemployment by demanding documentation that does not exist," but an employer may thereafter terminate if documentation that is received later "shows the employee is not entitled to reemployment. . . ."  § 1002.122.  Actions by the employer after the return that are not related to resolving reemployment issues can raise Section 4311 discrimination questions.

Having identified differences between the anti-discrimination and the reemployment rights sections, we briefly address some similarities.  A USERRA treatise has usefully drawn from the statutory language and caselaw how an

---

[5] This approach has been adopted for USERRA claims in several circuits.  *See Velazquez-Garcia v. Horizon Lines of P.R., Inc.*, 473 F.3d 11, 16 (1st Cir. 2007); *Maxfield v. Cintas Corp. No. 2*, 427 F.3d 544, 551 (8th Cir. 2005); *Coffman v. Chugach Support Servs., Inc.*, 411 F.3d 1231, 1238-39 (11th Cir. 2005); *Leisek v. Brightwood Corp.*, 278 F.3d 895, 898-99 (9th Cir. 2002); *Sheehan v. Dep't of the Navy*, 240 F.3d 1009, 1013 (Fed. Cir. 2001); *Gummo v. Vill. of Depew*, 75 F.3d 98, 106 (2d Cir. 1996).  The Fifth Circuit has not spoken on this issue, but district courts in this circuit have used this analysis.  *E.g., Snowman v. IMCO Recycling, Inc.*, 347 F. Supp. 2d 338, 342 (N.D. Tex. 2004).

employer's actions involving an employee returning from military service can occasionally implicate both parts of the Act:

> Section 4311's protection against discrimination and retaliation should not be confused with the right to reemployment under § 4312 of USERRA. It is possible that denying reemployment to a returning servicemember could, depending on the facts, give rise to claims under both § 4311 and § 4312. Nonetheless, the two sections are separate and distinct. Section 4312 entitles a returning servicemember to reemployment rights and benefits provided by USERRA if the person meets reemployment-eligibility criteria enumerated in § 4312. No showing of discriminatory or retaliatory intent is necessary to establish a violation of § 4312. By contrast, § 4311 does not provide for entitlement to USERRA's reemployment rights and benefits but, rather, protects against denial of reemployment for a discriminatory or retaliatory reason. Thus, a discriminatory or retaliatory motive must be shown to establish a violation of § 4311.

KATHRYN PISCITELLI AND EDWARD STILL, USERRA MANUAL § 7:5 (West 2012) (footnotes omitted).

Overview completed, we now determine how much of this is before us. Most fundamentally, what kind of claim has Bradberry brought? His complaint did not specify whether his claim arose under the anti-discrimination provision or the reemployment provision. Instead, he cited the entire USERRA statutory scheme in support of his claim that the County violated his rights. In his motion for partial summary judgment, he mentioned the notice provisions of Section 4312 but did not specifically state that the County violated USERRA by failing to reemploy. In its response, the County implied that Bradberry raised a claim under the reemployment provision by arguing that Bradberry failed to give proper advance notice of his Reserve obligations, which is an obligation under Section 4312.

In its order denying partial summary judgment, the district court stated it was unclear which provision of USERRA Bradberry was using. None of the

parties presented arguments explicitly stating that Sections 4311 and 4312 were the basis for different claims. The court concluded that Bradberry's claim was better understood as one for discrimination under Section 4311. Later, though, the district court considered Section 4312's notice requirements.

The arguments of the parties and the district court's order primarily address Section 4311 but with occasional incorporation of elements of Section 4312. Because our review of the district court's denial of collateral estoppel requires us to determine what issues are involved in the current case, there is some disconnect between what is presented to us and what we conclude must be analyzed in order to determine whether collateral estoppel applies.

### II. Collateral Estoppel

We have just discussed the burdens of proof in the claim that confronts us. Bradberry argues that he has already met his burden of proving discrimination due to prior administrative proceedings concerning his discharge. He relies on the doctrine of collateral estoppel, which prevents the same parties or their privies from relitigating issues that were litigated and decided in a prior action.[6] Bradberry urges the court to treat the ALJ's findings regarding his termination as final in this litigation, thus precluding Jefferson County from relitigating the circumstances surrounding his separation from the Sheriff's Department.

Collateral estoppel prevents litigation of an issue when: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision." *Pace v. Bogalusa City Sch. Bd.*, 403 F.3d 272, 290 (5th Cir. 2005). As the district court stated, some of our decisions recognize a fourth factor, namely, whether there are any special

---

[6] The related principle of res judicata applies to legal claims, instead of issues, and bars a suit from being brought again on an event that was the subject of a previous legal cause of action, fully and finally litigated. The two doctrines frequently overlap. *See United States v. Shanbaum*, 10 F.3d 305, 310 (5th Cir. 1994).

No. 12-41040

circumstances that make it unfair to apply the doctrine. These equitable considerations apply only to "offensive collateral estoppel." *See Swate v. Hartwell (In re Swate)*, 99 F.3d 1282, 1290 (5th Cir. 1996) (noting that some of our decisions improperly suggest the equitable factor applies to all collateral estoppel situations). The Supreme Court has defined the term as follows:

> [O]ffensive use of collateral estoppel occurs when the plaintiff seeks to foreclose the defendant from litigating an issue the defendant has previously litigated unsuccessfully in an action with another party. Defensive use occurs when a defendant seeks to prevent a plaintiff from asserting a claim the plaintiff has previously litigated and lost against another defendant.

*Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.4 (1979).

*Parklane* did not categorize all collateral estoppel situations but only those in which one of the litigants was not a party to the prior proceeding. The Court was answering "whether a litigant who was not a party to a prior judgment may nevertheless use that judgment 'offensively' to prevent a defendant from relitigating issues resolved in the earlier proceeding." *Id.* at 326. It recognized that the doctrine of mutuality of parties had traditionally been a bar to the use of collateral estoppel: "Under this mutuality doctrine, neither party could use a prior judgment as an estoppel against the other unless both parties were bound by the judgment." *Id.* at 326-27. The Court altered the requirement of mutuality and permitted a plaintiff not involved in the earlier litigation to estop a defendant from relitigating an issue on which it earlier lost if no unfairness resulted. *Id.* at 331. In the case before us, the collateral estoppel issue arises from previous proceedings in which *both* parties were involved. Consequently, the *Parklane* distinction between offensive and defensive estoppel when the prior proceedings did not involve both current parties does not apply.

In *Swate*, we acknowledged that "some recent decisions list the fairness requirement as a general requirement for the application of issue preclusion."

12

No. 12-41040

*Swate*, 99 F.3d at 1290. We noted, though, that the requirement originated in *Parklane*. *Id.* We concluded that if a case involves mutual estoppel, i.e.*,* where both parties were litigants in the prior action, "an inquiry into special circumstances is unnecessary." *Id.* Therefore, the district court erred in relying on equitable factors in concluding that collateral estoppel did not apply.

The district court rejected collateral estoppel. Generally, the issue of whether to apply collateral estoppel is a question of law, making our review *de novo*. *United States v. Brackett*, 113 F.3d 1396, 1398 (5th Cir. 1997). Our review is for an abuse of discretion, though, when considering a district court's evaluation of whether special circumstances exist to justify offensive collateral estoppel. *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 391-92 (5th Cir. 1998). Because offensive collateral estoppel is not involved in this case, our examination of the district court's decision is *de novo*.

The first relevant proceeding was a state administrative hearing. Jefferson County argued in the district court that the ALJ's findings are not entitled to preclusive effect. It has narrowed its argument on appeal just to say that *these* administrative proceedings are not entitled to preclusive effect. Whether state agency decisions are usable in federal court "is determined by the treatment those . . . proceedings would receive in the courts of the state . . . in which those prior proceedings were held." *Norris v. Hearst Trust*, 500 F.3d 454, 460-61 (5th Cir. 2007); *see also* 28 U.S.C. § 1738. We look to Texas caselaw to determine whether courts in Texas would treat a proceeding at the State Office of Administrative Hearings as a judicial proceeding.

Texas law applies collateral estoppel "to administrative agency orders when the agency is acting in a judicial capacity and resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *Muckelroy v. Richardson Indep. Sch. Dist.*, 884 S.W.2d 825, 830 (Tex. App. – Dallas 1994, writ denied) (quotation marks omitted). Some

considerations that weigh in favor of determining whether a party had an "adequate opportunity to litigate" include representation by counsel, witness testimony, the ability to cross-examine, and application of the rules of evidence. *See Turnage v. JPI Multifamily, Inc.*, 64 S.W.3d 614, 620 (Tex. App. – Hous. [1st Dist.] 2001, no pet.). There has not been any argument that the proceedings before the ALJ were inadequate in these ways, and we conclude that collateral estoppel is potentially available.

Having determined the ALJ's findings can at times be preclusive, we now consider whether collateral estoppel is appropriate here. We are to consider whether: (1) the issue at stake in the USERRA claim is identical to the one involved in the proceeding before the ALJ; (2) the issue was actually litigated before the ALJ; and (3) the ALJ's determination was necessary to the decision. *See Pace*, 403 F.3d at 290. Additionally, "both the facts and the legal standard used to assess them [must be] the same in both proceedings." *Copeland v. Merrill Lynch & Co.,* 47 F.3d 1415, 1422 (5th Cir. 1995).

Bradberry argues there are four findings by the ALJ that are precluded from relitigation. One is that the County discharged him due to a disagreement about military leave. The other three are that Bradberry was not insubordinate, was not absent without leave, and did not fail to provide adequate documentation regarding the reasons for his absence. The ALJ clearly made fact-findings that rejected the trio of reasons offered by the County for Bradberry's termination. Less clear is if the ALJ actually found that Bradberry was discharged due to a "disagreement over military leave," or simply ordered, after finding that the County had not proved its stated grounds, an essentially meaningless substitute explanation.

In answering this question, we start by repeating that the issue before the ALJ was whether "the alleged misconduct occurred"; when there is insufficient evidence to show the claimed misconduct, the ALJ orders the report to be

14

changed. TEX. OCC. CODE § 1701.4525(e). The report is significant because each law enforcement agency to which the officer later applies sees the report. In addition, the license of a law enforcement officer who is dishonorably discharged two times is suspended. TEX. OCC. CODE § 1701.4521. Our examination of these Texas statutes suggests to us that the ALJ needed to decide only whether there was enough evidence to allow the F-5 Report to reflect a dismissal due to misconduct. Of course, determining why an officer was *really* terminated is certainly relevant when deciding whether the stated reasons are valid.

The ALJ's order summarized the evidence about Bradberry's military duty, the extension of the period of leave, and the communications between the County and Bradberry. Immediately following that summary was this statement: "The best explanation on the F-5 form for the circumstances" of the termination includes that it was due to "[d]isagreement over military leave." We accept that sentence as a fact finding because it resolved a factual issue based on the available evidence.

For collateral estoppel, though, not only must the earlier proceedings have actually adjudicated the specific issue, but that determination must have been necessary to the decision. *Pace*, 403 F.3d at 290. The parties have not briefed the intricacies of Texas administrative practice to help us understand whether the ALJ's finding about the real reason Bradberry was discharged was a necessary finding. We will assume in our analysis that it was.

Next, what do these findings mean for USERRA purposes? In considering collateral estoppel, we break down the issues for a Section 4311 discrimination claim, then for a Section 4312 reemployment claim, and finally analyze whether either has identical issues to what the ALJ resolved.

*A. Discrimination claim*

The burden for a plaintiff in a Section 4311 claim is to prove that military status was a motivating factor in the employer's actions. 38 U.S.C. § 4311 (c)(1).

No. 12-41040

The phrase "motivating factor" is not defined in USERRA, but the Supreme Court explained it in this way:

> We therefore hold that if a supervisor performs an act motivated by antimilitary animus that is *intended* by the supervisor to cause an adverse employment action, and if that act is a proximate cause of the ultimate employment action, then the employer is liable under USERRA.

*Staub v. Proctor Hosp.*, 131 S.Ct. 1186, 1194 (2011) (footnotes omitted). The Court was evaluating a situation in which the supervisor with the animus was not the final decision-maker, thus requiring an analysis of whether the supervisor's intent had actually motivated the ultimate employment action. *Id.* at 1192-93. That analysis is not needed here.

We apply that understanding here to say that if one reason for the employer's actions was Bradberry's "membership, application for membership, service, application for service, or obligation for service in the uniformed services," then that reason was a motivating factor.

The evidence so far presented in this case or, based on the ALJ's summary, in the administrative action, has never shown an animus by the County towards those in military service. It supports that the County had doubts about the legitimacy of Bradberry's extension of military leave. A memorandum was sent by the County to the Department of Labor when Bradberry's complaint was being reviewed. The County set out what it had requested from Bradberry and how he had not complied. The memorandum states that other County officers had military obligations, and all other officers had responded acceptably to the periodic request for verification of their service. The Department of Labor found that Bradberry "was not forthcoming or cooperative" with the request for documentation. The ALJ detailed the disagreements the County and Bradberry had about what was available that could prove he had been ordered to extend his military service. There also is evidence to support that the County actually

considered Bradberry to be absent without leave and insubordinate.

We apply these findings to the requirements of a Section 4311 discrimination claim. Under that statute, it matters whether the County was motivated by Bradberry's military status or only motivated by what it thought were insubordination and a dishonest assertion that his military duty had been extended. Except as specifically provided otherwise, USERRA does not exempt those in the military from complying with the usual rules of behavior in the workplace or being subject to the usual discipline. That discipline can include discharge that will not be affected, as Bradberry's was not, by an ALJ's later determination that the stated grounds were not proven. There has been no effort in this case to show that Bradberry was treated differently than other employees who, after absences for one reason or another, did not justify to the County's satisfaction their claimed basis for missing work.

We conclude that a finding that Bradberry was discharged due to a disagreement about military service is not the equivalent of a finding that the County was motivated by his military status to discharge him. The district court did not err in refusing to apply collateral estoppel to the ALJ's finding. The issue of motivation remains an unresolved fact question.

### B. Violation of Reemployment Rights

The ALJ's finding that Bradberry had been discharged due to a disagreement about military leave presents the need to consider Section 4312 as well. After Bradberry couched much of his argument in terms of discrimination under Section 4311, the County responded in terms of Bradberry's being absent without leave and failure to document, which raise facts relevant to Section 4312 reemployment. The County used those reasons to explain why he would have been terminated anyway – a defense to Section 4311 discrimination.

Though we have held that the finding of a disagreement about military leave is not sufficient to prove motivation under Section 4311, a discriminatory

intent does not need to be shown under Section 4312. 20 C.F.R. § 1002.33. If Bradberry complied with his USERRA obligations in order to be reemployed after two weeks of military duty, then the possibility that the County had no discriminatory intent would not matter.

We do not analyze the possible collateral estoppel effects of the ALJ's decision on a Section 4312 claim because no one has briefed it. We note, though, that a requirement for collateral estoppel is that the same legal standard be used in both proceedings to assess the facts on any issue considered to be identical. *Pace*, 403 F.3d at 290. The legal standards under USERRA include that the servicemember give "notice as far in advance as is reasonable under the circumstances," which usually would be at least 30 days. 20 C.F.R. § 1002.85(d); *see also* 38 U.S.C. § 4312(a)(1). Military necessity and impossibility may excuse the notice. 38 U.S.C. § 4312(b). Documentation depends on its availability and the length of service. § 4312(f). These USERRA standards were not discussed by the ALJ nor briefed by the parties, and no one has tried to compare them to standards the ALJ may have used in making these three findings.

### C. *Affirmative Defenses*

We address one final disputed point, namely, the degree to which affirmative defenses are properly in this case. The district court discussed affirmative defenses under USERRA. The defenses create factual issues beyond those presented to the ALJ regarding the F-5 Report. The district court stated that other issues could include whether the military service was a motivating factor and whether he would have been terminated anyway. The district court called Bradberry's possibly deficient advance notice an affirmative defense under Section 4311, but it is actually the plaintiff's burden under Section 4312. Finally, an issue could be that circumstances had changed so as to make reemployment unreasonable (a Section 4312 affirmative defense).

Initially, the County raised no affirmative defenses in its answer. A week

after Bradberry mentioned their absence in a footnote to his summary judgment brief, the County filed an amended answer. The defenses it raised were these:

> Defendant is not liable to Plaintiff because Defendant would have terminated Plaintiff in the absence of Plaintiff's military status. Specifically, Defendant would have terminated Plaintiff for his insubordination and failure to truthfully answer questions or provide documentation and relevant statements to the Sheriff or any supervisor in a departmental investigation when so ordered.

The County did not raise faulty notice or changed circumstances in this amended answer. Instead, these defenses were raised for the first time in the County's response to Bradberry's motion for partial summary judgment.   In his reply to the County's response, Bradberry made no objection to the additional defenses raised by the County.

Generally, affirmative defenses must be presented in the answer. FED. R. CIV. P. 8(c)(1). Even so, if the defense is later presented "in a manner that does not result in unfair surprise[,] . . . technical failure to comply precisely with Rule 8(c) is not fatal." *Allied Chem. Corp. v. Mackay*, 695 F.2d 854, 855-56 (5th Cir. 1983).   The defense may be considered if it was raised "at a pragmatically sufficient time, and [the plaintiff] was not prejudiced in its ability to respond." *Id.* at 856.   The district court, in denying collateral estoppel, several times referred to unpled affirmative defenses, without acknowledging the pleading defect. The County raised its affirmative defenses before the district court and Bradberry had the opportunity to respond to them.  Bradberry failed to object in his response. Thus, he has waived any objection to consideration of these additional reasons offered by the County for his termination.

The County's reply to Bradberry's motion raised what it labeled as "defenses" of deficient advance notice, failure to return promptly to civilian work following the completion of Army Reserve duty, and absence of proof that the military had determined there was a military necessity to extending his orders.

No. 12-41040

Those are not affirmative defenses but are parts of Bradberry's case. It also argued the Section 4311 affirmative defense that he would have been terminated anyway, and the Section 4312 affirmative defense of changed circumstances that made Bradberry's reemployment unreasonable. Bradberry's reply argued that "failure to give preclusive effect to the ALJ's findings of fact will allow Defendant to advance certain affirmative defenses . . . even though it failed to prove them by a preponderance of the evidence in the administrative proceeding." Nothing in the reply brief argued that there was a defect in pleading.

By the time the summary judgment motion was fully briefed, several defenses had been injected into the case. Bradberry had the opportunity to respond and made no objection. The district judge considered the defenses. We conclude that the technical failure to plead all the currently presented defenses does not prevent consideration of them.

### III. Preemption

Jefferson County argues that USERRA preempts Sections 613.001-613.023 of the Texas Government Code. Chapter 613 is similar to USERRA in that it provides for the reemployment of public employees who are returning from military service. TEX. GOV'T CODE § 613.002. If a state or local entity fails to reemploy an individual following discharge from military service, a court may require the official to comply with the statute. TEX. GOV'T CODE § 613.021. The County argues Congress intended a uniform set of protections to be available to returning veterans and expressly forbade modification of these protections by state law.[7]

---

[7] USERRA specifically describes its intended relation to other laws, including Congress's express intent not to supersede any state law that establishes a right or benefit in addition to a right provided under USERRA. *See* 38 U.S.C. § 4302(a). The section also notes the intent to supersede any state law that reduces or eliminates any right provided under USERRA, "including the establishment of additional prerequisites to the exercise of any such

No. 12-41040

The County's brief suggests that Chapter 613 is preempted by USERRA because the statutes have incompatible notice requirements. The district court declined to address preemption at the summary judgment stage. Although the issue was certified for interlocutory appeal, it is unclear at this stage whether it will ever be necessary to decide whether preemption applies. A resolution of this constitutional issue on interlocutory appeal is premature.

## IV. Supplemental Jurisdiction

As discussed above, Chapter 613 of the Texas Government Code codifies a policy of accommodating the public employees of the State and its political subdivisions who serve in the military. The district court noted that there are "only a handful of Texas Attorney General Opinions addressing the provisions of Chapter 613," and expressed concern over the lack of guidance regarding the exercise of subject-matter jurisdiction over such a claim. The court itself raised a jurisdictional issue, which was whether a federal court "can exercise jurisdiction over such a cause of action in light of the specific language of Section 613.021 requiring that a petition to enforce reemployment rights be filed in state district court." The statute that concerned the district court provides:

> If a public official fails to comply with a provision of [Chapter 613], a district court in the district in which the individual is a public official may require the public official to comply with the provision on the filing of a motion, petition, or other appropriate pleading by an individual entitled to a benefit under the provision.

TEX. GOV'T CODE § 613.021. The district court did not rule on the jurisdictional question, but it is one of the issues certified for our review. As we will discuss, we see this provision as one establishing venue in state court, and it has no effect on the exercise of supplemental jurisdiction in federal court.

_____

right or the receipt of any such benefit." 38 U.S.C. § 4302(b).

No. 12-41040

The relevant statute says "a [state] district court in the district in which the individual is a public official" is the proper court to hear the claim. *Id.* Jefferson County argues that *only* a state district court in the district where the service member was denied reemployment may grant relief. Only one case is cited for the proposition that a federal court cannot exercise supplemental jurisdiction over state law claims when a state statute identifies the appropriate state court for those claims. *See City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156 (1997). The Court did not address the issue for which it is now cited. Instead, it held that once original jurisdiction exists in federal district court over some claims, the court may resolve "all other claims that are so related to claims in the action . . . that they form part of the same case or controversy." *Id.* at 165 (quoting 28 U.S.C. § 1367(a)). The exercise of supplemental jurisdiction is discretionary, with statutory factors to guide the exercise of the discretion. 28 U.S.C. § 1367(c). Abstention doctrine may also compel a district court to refrain from considering state law issues. *Int'l Coll. of Surgeons*, 522 U.S. at 174. There has been no suggestion that abstention applies here.

Our question is far simpler: does a statute that identifies which state court is to hear a certain case prevent a federal district court – which of course is not the identified state court – from exercising supplemental jurisdiction over the claim? There is nothing extraordinary about a state statute limiting which court can hear a claim. Whatever Section 613.021 means for state court lawsuits, it is no barrier to the exercise of supplemental jurisdiction in federal court.

AFFIRMED.

Judge Haynes concurs in the judgment only.