# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**
June 8, 2022

Lyle W. Cayce
Clerk

No. 21-10937

ETC Sunoco Holdings, L.L.C., *formerly known as* Sunoco, Inc.,

*Plaintiff—Appellant*,

*versus*

United States of America,

*Defendant—Appellee*.

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:20-cv-2981

Before Clement, Graves, and Costa, *Circuit Judges*.
Gregg Costa, *Circuit Judge*:

Sunoco sued the Internal Revenue Service in Texas federal court, seeking a partial refund of its income tax payments for 2010 and 2011. Sunoco's claims rested on a theory of reduced tax liability that the company had argued unsuccessfully for prior tax years in the Court of Federal Claims. Because the issue was fully and actually litigated in the earlier case, the district court dismissed Sunoco's new suit under collateral estoppel. We affirm.

No. 21-10937

I

The United States collects an excise tax on the sale of motor fuels. 26 U.S.C. § 4081. In 1983, Congress enacted a tax incentive program that reduced the excise-tax rate for certain renewable fuels, including alcohol-fuel mixtures. *See* Highway Revenue Act of 1982, Pub. L. No. 97-424, 96 Stat. 2097. The incentives popularized the production of blended fuel but depleted the Highway Trust Fund, which receives the revenue from the fuel excise tax. H.R. Rep. No. 108-548, pt. 1, at 141–42 (2004). So, in 2004, Congress restructured the program. It passed the American Jobs Creation Act, which replaced the reduced tax rate for blended fuels with an "equivalent" incentive. *See id.* at 142; Pub. L. No. 108-357, 118 Stat. 1418. Under the new framework, fuel producers could claim a refundable credit against their excise-tax liability for each gallon of alcohol that they blended into the gasoline they sold. 26 U.S.C. § 6426(a)(1).

The fuel industry soon realized that the Jobs Act might offer an added tax benefit: it could potentially also reduce their income-tax liability. Excise taxes are one of the "costs of goods sold" that taxpayers may subtract from their gross profits for income-tax purposes. *See* 26 U.S.C. § 162(a); 26 C.F.R. § 1.61-3(a). If fuel companies could report the facially higher excise tax for blended fuel as a cost of sale, without discounting the amount refunded in mixture credits, the refunded income would be tax-free.

Sunoco is a one of the country's largest producers and distributors of blended fuels. From 2005 to 2011, the company claimed over $1.3 billion in mixture credits. In its original tax returns for those years, Sunoco only included its net excise-tax payments (after the credits applied) in the costs of goods sold. But the company later amended its returns, adjusting its gross income to reflect the excise taxes that it *would* have paid if it had not claimed the credits. The difference was substantial: Sunoco asked the IRS to refund

2

No. 21-10937

more than $300 million for the tax years 2005-2008[1], and nearly $150 million for the years 2010-2011.  The IRS denied the refund claims.

Sunoco brought the dispute over the 2005–2008 tax years to the Court of Federal Claims.  Sunoco argued that the mixture credits satisfied but did not technically "reduce" the company's excise-tax liability, so there was no reason to subtract the credits from the taxes included in the costs of goods sold.  The court disagreed and ruled for the IRS.  The Federal Circuit affirmed, holding: "Sunoco asks this court to permit it to deduct, as a cost of goods sold, an excise-tax expense that it never incurred or paid.  Neither the text of the Jobs Act nor its legislative history supports such a reading of the Internal Revenue Code."  *Sunoco, Inc. v. United States* (*Sunoco I*), 908 F.3d 710, 715 (Fed. Cir. 2018).

Sunoco sued the IRS again five years later, seeking to recover the alleged overpayments from tax years 2010–2011.  The company made the same argument as before.  But, this time, it filed the complaint in the Northern District of Texas.  The district court held that issue preclusion barred the suit.  The court concluded that that the three elements of issue preclusion were met: "(i) the Court of Federal Claims and the Federal Circuit decided the taxability of the Mixture Credit in *Sunoco I*; (ii) [Sunoco] had a full and fair opportunity to litigate this issue and did so; and (iii) determining these issues was necessary to the Court's judgment in *Sunoco I*."

---

[1] Sunoco incurred a net operating loss in 2009, so it did not pay federal income tax that year.

No. 21-10937

## II

The only question is the correctness of the issue preclusion ruling. Sunoco does not dispute that the three traditional elements of preclusion are satisfied. It argues, however, that the court should have considered a fourth factor: whether there are "special circumstances that would render preclusion inappropriate or unfair." *Gandy Nursery, Inc. v. United States*, 318 F.3d 631, 639 (5th Cir. 2003). We sometimes apply this exception when an intervening change in "controlling legal principles" makes the prior ruling erroneous or obsolete. *See Petro-Hunt, L.L.C. v. United States*, 365 F.3d 385, 399 (5th Cir. 2004); *see also Montana v. United States*, 440 U.S. 147, 161 (1979). Sunoco maintains that the exception applies here because, since *Sunoco I*, two of its competitors have appealed the same mixture-credit issue to other circuits. *See Exxon Mobil Corp. v. United States*, No. 21-10373 (5th Cir. filed October 26, 2021); *Delek US Holdings, Inc. v. United States*, 32 F.4th 495 (6th Cir. 2022). A decision for the fuel producer in either case would create a circuit split that might lead the Supreme Court to take up the issue. And thus, Sunoco argues, there could be an intervening change in law that would render *Sunoco I* obsolete.

We disagree and hold that *Sunoco I* has preclusive effect. To start, Sunoco relies on a change in law, which has yet to (and may never) occur. We have not ruled in *Exxon*. And while the Sixth Circuit has decided *Delek* since this appeal was filed, it agreed with the Federal Circuit's interpretation of the mixture credit. 32 F.4th at 495. There has been no "major change[] in the law governing" this case. *See Montana*, 440 U.S. at 161. Sunoco warns that this does not "foreclose the possibility" that the law *could* change in the future. But if that amounted to a special circumstance, preclusion would never apply.

4

No. 21-10937

Sunoco's appeal suffers from a more fundamental flaw: We do not consider special circumstances when "both parties were involved" in the prior suit. *Bradberry v. Jefferson Cty.*, 732 F.3d 540, 549 (5th Cir. 2013); *see Kariuki v. Tarango*, 709 F.3d 495, 506 (5th Cir. 2013). Traditionally, collateral estoppel did not contain a special-circumstances exception. *See Bradberry*, 732 F.3d at 549. But it did require mutuality of parties. *Id.* The exception appeared after *Parklane* softened the mutuality rule, *id.*, permitting a plaintiff to estop a defendant from relitigating an issue that it argued and lost in a suit against a different plaintiff so long as "no unfairness" resulted, *see Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 331–32 (1979). After *Parklane*, some of our decisions "list[ed] the fairness requirement as a general requirement for the application of issue preclusion." *RecoverEdge, L.P. v. Pentecost*, 44 F.3d 1284, 1290 n.12 (5th Cir. 1995). But we later clarified that the requirement does not extend to instances of traditional or "mutual estoppel." *In re Swate*, 99 F.3d 1282, 1290 (5th Cir. 1996); *see also Liberty Mut. Ins. Co. v. FAG Bearings Corp.*, 335 F.3d 752, 757–59 (8th Cir. 2003) (explaining that equitable considerations are limited to cases involving mutual estoppel). The finality concerns underlying preclusion doctrine are strongest when the same parties would be forced to relitigate "what is essentially the same controversy." *See* Restatement (Second) of Judgments § 28(2) cmt. b (1982). In that situation, preclusion applies without regard for equitable factors.[2]

---

[2] Sunoco argues that *Swate* and *Bradberry* misinterpreted dicta in *RecoverEdge*. But those cases are consistent. *RecoverEdge* doubted that a "requirement of fairness would apply" to mutual estoppel but declined to reach the question because the estopped party had not alleged any "special circumstance" affecting the case. 44 F.3d at 1290 n.12. *Swate* and *Bradberry* then confirmed that fairness only limits nonmutual estoppel. *See In re Swate*, 99 F.3d at 1290; *Bradberry*, 732 F.3d at 549.

Sunoco also maintains that, since *Bradberry*, we have "returned to considering special circumstances" in the context of mutual estoppel. But Sunoco cites just two cases,

No. 21-10937

That is the case here. Because Sunoco and the IRS were both parties to *Sunoco I*, "an inquiry into special circumstances is unnecessary." *See In re Swate*, 99 F.3d at 1290. Sunoco is barred from relitigating the Federal Circuit's conclusion that it cannot use the mixture credits to offset both excise-tax and income-tax liability.

The judgment is AFFIRMED.

---

neither of which supports that statement. One involved a different estoppel exception, which narrowly applies to disputes over secondary meaning in trademark cases. *See Test Masters Educ. Servs., Inc. v. Robin Singh Educ. Servs., Inc.*, 799 F.3d 437, 448 (5th Cir. 2015). The other—a one-page, unpublished decision—listed special circumstances as a general estoppel factor but did not apply it. *See Jackson v. Fort Bend Cty. Sheriff's Dep't*, 722 F. App'x 390, 390 (5th Cir. 2018) (unpublished).