RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 22a0078p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

DELEK US HOLDINGS, INC.,

　　　　　　　　　　*Plaintiff-Appellant*,

　　*v.*

UNITED STATES OF AMERICA,

　　　　　　　　　　*Defendant-Appellee*.

No. 21-5257

Appeal from the United States District Court for the Middle District of Tennessee at Nashville.
No. 3:19-cv-00332—William Lynn Campbell, Jr., District Judge.

Argued:  January 13, 2022

Decided and Filed:  April 22, 2022

Before:  GIBBONS, ROGERS, and NALBANDIAN, Circuit Judges.

_____

## COUNSEL

**ARGUED:**  Robert J. Kovacev, NORTON ROSE FULBRIGHT US LLP, Washington, D.C., for Appellant.  Paul A. Allulis, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  **ON BRIEF:**  Robert J. Kovacev, NORTON ROSE FULBRIGHT US LLP, Washington, D.C., Robert C. Morris, NORTON ROSE FULBRIGHT US LLP, Houston, Texas, for Appellant.  Paul A. Allulis, Bruce R. Ellisen, UNITED STATES DEPARTMENT OF JUSTICE, Washington, D.C., for Appellee.  David B. Blair, Carina C. Federico, CROWELL & MORING LLP, Washington, D.C., for Amicus Curiae.

---

**OPINION**

---

NALBANDIAN, Circuit Judge.  Delek, a fuel producer, contends that it overpaid its income taxes and seeks a refund.  The IRS counters that what Delek really wants to do is double dip.  Delek earned a tax credit by mixing renewables into its products.  Since that credit applies against the fuel excise tax, Delek ended up paying less in excise taxes.  But Delek insists it should be deemed to have paid the full, unreduced amount of excise tax.  Why would it say that?  When calculating its gross income, a producer can include its excise tax liability in its cost of goods sold.  And a higher cost of goods sold means a lower gross income, which means a lower income tax liability.

To that end, Delek offers a novel theory: The credit is a "payment" that *satisfies*, but does not *reduce*, its excise tax liability.  But the statute's plain meaning says otherwise, and we AFFIRM summary judgment in the government's favor.

I.

For decades, downstream fuel producers have had to pay an excise tax, which is imposed upon "the removal of a taxable fuel from any refinery . . . [or] terminal," the "entry into the United States of any taxable fuel for consumption, use, or warehousing," and the "sale of taxable fuel" to certain purchasers.  26 U.S.C. § 4081(a)(1)(A).

In the 1970s, Congress decided it should incentivize renewable fuels, so it tried a few different things.  In 1978, it exempted alcohol-blended fuels from the excise tax.  *See* Energy Tax Act of 1978, Pub. L. No. 95-618, § 221, 92 Stat. 3174, 3185.  Then in 1982, Congress replaced this exemption with a reduced excise tax rate.  *See* Highway Revenue Act of 1982, Pub. L. No. 97-424, § 511(d)(1), 96 Stat. 2097, 2171.  All of this helped the environment perhaps, but not so much our nation's highways.  That's because revenues from the tax fund the Highway Trust Fund.

So in 2004, Congress moved things around in an effort to incentivize renewable fuels *without* undermining highway funding. It passed the American Jobs Creation Act of 2004 ("Jobs Act"), which retooled the Internal Revenue Code in key aspects. Pub. L. No. 108-357, 118 Stat. 1418. First, Congress eliminated the reduced tax rate for alcohol blends. Second, Congress introduced a new incentive scheme. Under § 6426, a fuel producer can now earn "a credit" (the "Mixture Credit") by mixing alcohol or biodiesel into its products. The Mixture Credit applies "against the [excise] tax imposed by section 4081." 26 U.S.C. § 6426(a)(1). And under § 6427(e), a producer can also receive the Mixture Credit amount in the form of direct, non-taxable payments, but only to the extent the Mixture Credit exceeds the excise tax liability. 26 U.S.C. § 6427(e)(3) ("No amount shall be payable . . . with respect to any mixture or alternative fuel with respect to which an amount is allowed as a credit under section 6426.").[1] Third, Congress decoupled the Mixture Credit from highway funding by amending § 9503 of the Highway Revenue Act. That section now appropriates the full amount of a producer's § 4081 excise tax to the Highway Trust Fund "without reduction for credits under section 6426." 26 U.S.C. § 9503(b)(1). That way, producers collect a reward for mixing in renewable fuels, but highway funding doesn't suffer as a result.

Fast forward a few more years, and we arrive at the facts of this case. In 2010 and 2011, Delek claimed over $64 million in Mixture Credits. So when Delek filed its 2010 and 2011 tax returns, it subtracted this Mixture Credit amount from its cost of goods sold. This increased Delek's gross income and—by extension—its income tax burden. But in 2015, Delek had a change of heart and filed a refund claim worth more than $16 million. Delek claimed that its § 6426 Mixture Credits were "payments" that could only *satisfy*, but not *reduce*, the excise tax amount. And so, Delek argued, subtracting the Mixture Credit from its cost of goods sold was a mistake.

The IRS denied the claim. Delek sued in the Middle District of Tennessee, seeking judgment in the amount of the alleged overpayment. The district court granted summary

---

[1]In lieu of either incentive, producers can choose instead to apply *income* tax credits under 26 U.S.C. §§ 40 and 40A. Producers who choose this option must include the credit amount in their gross income. 26 U.S.C. § 87. This optionality feature is nothing new. Producers were able to choose between the reduced excise tax rate and income tax credits under the previous regime as well.

judgment in the government's favor.  *Delek US Holdings, Inc. v. United States*, 515 F. Supp. 3d 812, 820 (M.D. Tenn. 2021).  Delek appealed.

## II.

We "review a district court's grant of summary judgment de novo, viewing all the evidence in the light most favorable to the nonmoving party and drawing 'all justifiable inferences' in his favor."  *Fisher v. Nissan N. Am., Inc.*, 951 F.3d 409, 416 (6th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986)).

## III.

## A.

This case reduces to a single question: By accepting the Mixture Credit, did Delek pay a lesser amount in fuel excise taxes?  Section 6426's text plainly says yes, and so it's decisive.  *See United States v. Bedford*, 914 F.3d 422, 427 (6th Cir. 2019) ("[W]here the statutory language is unambiguous, our inquiry both begins and ends with the text itself."); *Keen v. Helson*, 930 F.3d 799, 805 (6th Cir. 2019) ("[W]hen, as here, the text is clear, that is the end of the matter.").

Section 6426 says this: The Mixture Credit "shall be allowed as a credit . . . against the tax imposed by section 4081."  26 U.S.C. § 6426(a)(1).  The first step is to define "credit."  The statute leaves it undefined, which means "we give the term its ordinary meaning."  *Taniguchi v. Kan Pac. Saipan, Ltd.*, 566 U.S. 560, 566 (2012).  And we can discern that ordinary meaning "by reference to dictionaries in use at the time the statute was enacted."  *In re Application to Obtain Discovery for Use in Foreign Procs.*, 939 F.3d 710, 717 (6th Cir. 2019).  Both sides cite Black's Law Dictionary, which defines "tax credit" as "[a]n amount *subtracted* directly from one's total tax liability, dollar for dollar, as opposed to a deduction from gross income."  *Black's Law Dictionary* 1501 (8th ed. 2004) (emphasis added).  Merriam-Webster similarly defines "credit" as "a *deduction* from an amount otherwise due."  *Merriam-Webster's Collegiate Dictionary* 294 (11th ed. 2003) (emphasis added).

Next are "subtract" and "deduct."  To "subtract" is "to take away by or as if by deducting."  *Id.* at 1246.  And to "deduct" is to "take away (an amount) from a total."  *Id.* at 324.  So that means a "credit" takes away from "total tax liability" or "an amount otherwise due."  And it stands to reason that when a credit *takes away* from a liability, it *reduces* that liability.

Indeed, that is precisely how courts understand and use the term.  *See, e.g.*, *United States v. Hemme*, 476 U.S. 558, 561 n.1 (1986) ("A credit directly reduces the amount of tax that must be paid, dollar for dollar . . . ."); *Randall v. Loftsgaarden*, 478 U.S. 647, 657 (1986) (noting that "tax credits . . . reduce the taxes otherwise payable on account of such income"); *United States v. Fruehauf Corp.*, 577 F.2d 1038, 1043 (6th Cir. 1978) (explaining that 26 U.S.C. § 6416(c) "provides for tax credits that reduce the excise tax liability of a manufacturer"); *United States v. Hoffman*, 901 F.3d 523, 538 (5th Cir. 2018) ("A tax credit is the public sector equivalent of a coupon; it reduces the amount that is otherwise owed."); *R.H. Donnelley Corp. v. United States*, 641 F.3d 70, 74 (4th Cir. 2011) ("[T]he Code allows taxpayers to reduce their tax liability dollar-for-dollar by claiming credits."); *Telecom*USA, Inc. v. United States*, 192 F.3d 1068, 1079 (D.C. Cir. 1999) ("[A] tax credit is a dollar-for-dollar reduction in a taxpayer's tax liability."); *Arc Elec. Constr. Co. v. Comm'r*, 923 F.2d 1005, 1008 (2d Cir. 1991) ("Credits, by definition . . . diminish tax liability."); *Papago Tribal Util. Auth. v. FERC*, 776 F.2d 828, 830 (9th Cir. 1985) (noting "the reduction in tax liability that results from the use of a credit"); *Tempel v. Comm'r*, 136 T.C. 341, 350 (2011) (characterizing a state tax credit as "[a] reduction in a tax liability").

The final piece, then, is this: What is the "total tax liability" here?  Or put another way, what is the Mixture Credit subtracted *from*?  The answer has to be Delek's entire excise tax liability.  This is because we must give meaning to the words "against the tax imposed by section 4081."  26 U.S.C. § 6426(a)(1).  Any other interpretation contravenes "the cardinal rule that statutory language must be read in context since a phrase gathers meaning from the words around it."  *Gen. Dynamics Land Sys., Inc. v. Cline*, 540 U.S. 581, 596 (2004) (cleaned up).  And it runs afoul of the canon against surplusage as well, which provides that "every word and every provision is to be given effect [and that n]one should needlessly be given an interpretation that causes it . . . to have no consequence."  *Nielsen v. Preap*, 139 S. Ct. 954, 969 (2019) (quoting Antonin Scalia & Bryan Garner, *Reading Law: The Interpretation of Legal Texts* 174 (2012)).

So "credit" cannot be read divorced from "against the tax imposed by section 4081." 26 U.S.C. § 6426(a)(1).

Putting it all together, the Mixture Credit plainly reduces the taxpayer's excise tax burden. This is the only way to give meaning to every word that Congress authored. And indeed, our conclusion is consistent with the only other circuit to have addressed this question. In *Sunoco, Inc. v. United States*, the Federal Circuit held that because "Section 6426(a)(1) explicitly provides that . . . the Mixture Credit, is applied 'against' the gasoline excise tax," "the Mixture Credit works to reduce the taxpayer's overall excise-tax liability." 908 F.3d 710, 716 (Fed. Cir. 2018). Like us, our sister circuit emphasized the ordinary meaning of "credit." *See id.* ("[A] credit is any amount that is allowable as a subtraction from tax liability for the purpose of computing the tax due or refund due." (internal quotation omitted)).

B.

But Delek argues that plain meaning comes out differently. It offers a flurry of reasons why the Mixture Credit is a "payment" that *satisfies* without *reducing* the excise tax. Each falls short.

*First*, Delek claims that the excise tax amount is "fixed and determined at the time of sale or removal of taxable fuels." (Appellant Br. at 26.) Since the amount is fixed in this way, the argument goes, a credit cannot reduce it after the fact. In support, Delek cites Treas. Reg. § 48.4081-3(g). But all that regulation says is that "[a] tax is imposed on the removal or sale of blended taxable fuel by the blender thereof." *Id.* It says nothing about whether the Mixture Credit can modify the amount of that "tax." Much more helpful is Treas. Reg. § 40.6302(c)-1(a)(3), which defines "net tax liability" as "the tax liability for the specified period *plus or minus any adjustments* allowable in accordance with the instructions applicable to the form on which the return is made." *Id.* (emphasis added). Accordingly, we consider the January 2010 version of IRS Form 720, which Delek used to file its excise tax returns. Those instructions specify that "[a]ny [Mixture Credit] must first be taken on Schedule C to reduce your taxable

fuel liability." Instructions for Form 720 at 14 (Rev. Jan. 2010).**²** This confirms that the Mixture Credit is part of—and therefore reduces—net excise tax liability.**³**

*Second*, Delek claims that under the government's interpretation, "there would never be *any* cash payment under [§ 6427(e)]." (Appellant Br. at 28-29.) Delek says "[t]his is because after the full tax liability is satisfied, there is nothing left to erase." (*Id.* at 29.) But this argument does not add up. The point is not whether there is something "left to erase." It's that once the Mixture Credit brings down the liability to zero, the taxpayer can shift gears into § 6427(e) and recoup the surplus as a payment. In fact, all of this was clear enough to the Joint Committee on Taxation, which explained that the Mixture Credit "must first be taken to reduce excise tax liability" and "[a]ny excess credit may be taken as a payment or income tax credit." Joint Committee on Taxation, *Tax Expenditures for Energy Production and Conservation*, JCX-25-09R at 24 (2009).

*Third*, Delek parries this by arguing that §§ 6426 and 6427(e) offer two equal options. In other words, there is no need to waterfall the incentive amount through § 6426 before claiming any excess as a § 6427(e) payment; a producer can choose between credits and payments from the start. And by extension, says Delek, Congress could not have intended for two equal options to result in materially different tax outcomes. Therefore, §§ 6426 and 6427(e) are two peas in a pod; neither results in a reduction of the producer's excise tax burden.

This calls for a closer scrutiny of the statutory language. The waterfall requirement flows from § 6427(e)(3), which says that "[n]o amount shall be payable . . . with respect to any mixture or alternative fuel with respect to which an amount is *allowed* as a credit under section 6426."

---

**²**Delek says IRS Form 720 itself supports its position. It emphasizes that taxpayers must fill out a line labeled "total tax" before adding in the Mixture Credit. (*See* R. 35-1, IRS Form 720, Part III, Line 3.) But Delek overreads "total tax." Line 3 is a preliminary placeholder, and the "total tax" here is the "tax liability" that is finalized as "net tax liability" consistent with Treas. Reg. § 40.6302(c)-1(a)(3).

**³**This is also why Delek's related argument that "[a] tax credit . . . typically operates equivalent to semimonthly cash deposits of Fuel Excise Taxes with the IRS" must fail. (Appellant Br. at 26.) Unlike the Mixture Credit, which *calculates into* net tax liability, semimonthly cash deposits *pay* that net tax liability. Indeed, the whole point of Treas. Reg. § 40.6302(c)-1 is to define how a taxpayer can use semimonthly deposits to pay for net tax liability. For example, the regulation specifies that "[t]he deposit of tax for each semimonthly period must be not less than 95 percent of the amount of net tax liability incurred during the semimonthly period." Treas. Reg. § 40.6302(c)-1(b).

(emphasis added). What does "allowed" mean? Typically, in the tax context, it refers to a deduction or credit "which is *actually taken* on a return and will result in a reduction of the taxpayer's income tax." *Lenz v. Comm'r*, 101 T.C. 260, 265 (1993) (emphasis added). The correlative to this is "allowable," which usually means that a credit simply "*qualifies* under a specific Code provision." *Id.* (emphasis added). Delek's argument turns on these definitions. Because § 6427(e) uses "allowed," Delek says, the Mixture Credit preempts § 6427(e) direct payments only insofar as the taxpayer *chooses* to take Mixture Credits instead.

So far so good. But the argument still fails. While Delek dissects the language of § 6427(e), it neglects § 6426. The latter says that the Mixture Credit "*shall* be allowed as a credit . . . against the tax imposed by section 4081." 26 U.S.C. § 6426(a) (emphasis added). "Shall" is of course "used in laws, regulations, or directives to express what is mandatory." *Merriam-Webster's Collegiate Dictionary* 1143 (11th ed. 2003). So if we accept the typical definition of "allowed" and put two and two together, § 6426 *requires* taxpayers to "actually take" the Mixture Credit. And since producers can't receive any § 6427(e) payments that overlap with Mixture Credits actually taken, they must wait until the excise tax amount reaches zero before they can invoke § 6427(e). Any other interpretation requires us to apply inconsistent definitions of "allowed" across §§ 6426 and 6427(e). And that runs up against the presumption of consistent usage, under which "[c]ourts presume that the same words in the same statute mean the same thing." *In re Jackson Masonry, LLC*, 906 F.3d 494, 501 (6th Cir. 2018).

But what about, say, deductions for charitable donations? The governing statute provides that "[t]here *shall be allowed* as a deduction any charitable contribution . . . which is made within the taxable year." 26 U.S.C. § 170(a)(1) (emphasis added). Surely, Delek says, no taxpayer is ever *required* to donate to charity. Delek is right, of course. But this still doesn't change the outcome. All § 170(a)(1) shows is that Congress sometimes uses "allowed" in a different way: to refer to an amount that is *permitted*, not *actually taken*.

Importantly, what *is* constant here is this: Whichever definition of "allowed" applies, we must presume that Congress uses terms consistently among interrelated statutes. If "allowed" means an amount actually taken, then § 6426 is fatal to Delek's argument, for the reasons already explained. But if "allowed" means an amount permitted, then it's § 6427(e) that defeats Delek's

argument. This is because § 6427(e)(3) would read in the following way: "No amount shall be payable . . . with respect to any mixture or alternative fuel with respect to which an amount is [permitted] as a credit under section 6426." Under either definition, consistent usage controls, and the government's interpretation wins out. *See also Sunoco*, 908 F.3d at 718 (holding that under "the plain reading of the statute . . . the Mixture Credit must first be applied to reduce any § 4081 excise-tax liability, with any remaining Mixture Credit paid to the taxpayer under § 6427(e)").

*Fourth*, Delek focuses on § 9503. That section provides that dollar amounts allocated to the Highway Trust Fund "shall be determined without reduction for credits under section 6426." 26 U.S.C. § 9503(b)(1). According to Delek, this must mean that the excise tax amount is determined in the same way. But this argument does not get very far. For one thing, § 9503 is obviously about the allocation of highway funding, not the calculation of fuel producers' tax liabilities. So using § 9503 to clarify the Mixture Credit's effect on tax liability makes little sense. Indeed, § 9503(b)(1)'s text explicitly cabins its scope. Within the same sentence, the words "[f]or purposes of this paragraph" precede and qualify "shall be determined without reduction for [Mixture Credits]." *Id.* What's more, if Delek is right, and the text plainly supports its interpretation anyway, why would Congress use § 9503 to clarify the Mixture Credit's effect on highway funding in the first place? In other words, "there would be no reason to explicitly state that the amount to be deposited in to the Highway Trust Fund 'shall be determined without reduction for credits under section 6426.'" *Sunoco*, 908 F.3d at 717. And so adopting Delek's interpretation "would render a portion of the statutory language unnecessary." *Id.*

*Fifth*, Delek tries to analogize to other types of credits. For starters, Delek points to § 31(a)(1), which allows taxpayers to prepay their income tax by withholding wages from their paychecks. 26 U.S.C. § 31(a)(1). As Delek sees it, because § 31(a)(1) credits pay (without reducing) income tax liability, the Mixture Credit must operate in the same way. But § 31(a)(1) is an exception, not the rule. Congress went out of its way to say as much. More specifically, § 31(a)(1) comes paired with § 6211(b)(1), which clarifies that the taxpayer's liability is calculated "without regard to the credit under section 31." We do not see a § 6211(b)(1)-

equivalent for the Mixture Credit, and so Delek's analogy falls short. "Congress' use of 'explicit language' in one provision 'cautions against inferring' the same limitation in another provision." *State Farm Fire & Cas. Co. v. U.S ex rel. Rigsby*, 137 S. Ct. 436, 442 (2016) (quoting *Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 384 (2013)); *see also Intel Corp. Inv. Pol'y Comm. v. Sulyma*, 140 S. Ct. 768, 777 (2020) ("[W]e 'generally presum[e] that Congress acts intentionally and purposely when it includes particular language in one section of a statute but omits it in another.'" (quoting *BFP v. Resol. Tr. Corp.*, 511 U.S. 531, 537 (1994))).

Delek says we should ignore § 6211(b)(1) because that provision deals with the definition of a tax "deficiency." But we can ask a familiar question: If Delek is right, and tax credits cannot reduce liabilities as a default matter, why would Congress spell this out in § 6211(b)(1)? Delek does not say. It makes much more sense that tax credits as a default matter *do* reduce liabilities. *See supra* at 4-5. But because § 31(a)(1) credits are the odd ones out of the bunch, Congress had to clarify that they do not behave like a typical tax credit. In fact, the Internal Revenue Code's structure helps confirm that § 31(a)(1) credits are atypical. Congress bucketed § 31(a)(1) credits under subpart C of part IV of the Internal Revenue Code's first chapter. Subpart C is a carve-out that houses an unusual class of credits: Unlike every other income tax credit covered by part IV, subpart C credits do not reduce taxpayer liabilities. More specifically, as § 6401(b)(1) explains, subpart C credits go toward overpayment, while the other part IV credits are calculated into the liability itself (consistent with the ordinary meaning of "credit").[4] We see no reason to shoehorn the Mixture Credit into this sort of exception.

Delek also analogizes to § 4051(d), which provides for a credit against § 4051 truck excise taxes. More specifically, Delek points to a private letter ruling that says the § 4051(d)

---

[4]The full text of § 6401(b)(1) is this: "If the amount allowable as credits under subpart C of part IV of subchapter A of chapter 1 (relating to refundable credits) exceeds the tax imposed by subtitle A (reduced by the credits allowable under subparts A, B, D, and G of such part IV), the amount of such excess shall be considered an overpayment." The credits that appear under subparts E and F are factored into subpart B's § 38 general business credit. 26 U.S.C. §§ 38(b), (c)(4). On the other hand, does the second parenthetical in § 6401(b)(1) mean that a credit reduces a liability *only if* Congress says so explicitly? Not quite. For one thing, courts have always understood tax credits to reduce tax liabilities, as already explained. *See supra* at 5. And it's not as though they were relying on hidden parentheticals. What's more, the parenthetical here just reconfirms what is already obvious. Consider, for example, § 6401(b)(1)'s first parenthetical. It states that subpart C credits "relat[e] to refundable credits." In doing so, it adds nothing new—subpart C is already entitled "refundable credits." It stands to reason that Congress used both parentheticals in consistent ways: to fasten suspenders over a belt.

credit "does not reduce the § 4051 liability for that transaction; rather, this credit is used to reduce the total balance owed by X to the IRS." Priv. Ltr. Rul. 201022012 (Feb. 25, 2010). By analogy, Delek says, neither does the Mixture Credit reduce the fuel excise tax amount.

The problem is that private letter rulings "may not be used or cited to as precedent." *Liberty Nat. Bank & Tr. Co. v. United States*, 867 F.2d 302, 305 (6th Cir. 1989); *see also* 26 U.S.C. § 6110(k)(3) ("Unless the Secretary otherwise establishes by regulations, a written determination may not be used or cited as precedent."). And so they cannot supersede the statute's text. Indeed, if non-precedential IRS guidance is fair game, this only helps the government. That's because IRS Chief Counsel Advisory 201406001 (Jan. 30, 2014) would be on all fours. Addressing the precise issue and statute implicated in this appeal, it says: "[T]he claimant must treat the excise tax credits allowed under § 6426(a) as a *reduction* in its federal excise tax liability under §§ 4081 and 4041." (emphasis added). We would need to look no further.

Thus, each of Delek's textual arguments misses the mark. The government's interpretation coheres with the text's most natural reading.

C.

Aside from plain meaning, Delek advances two additional arguments. Neither changes the outcome.

To begin with, Delek points to something that it calls the "default exclusion rule." Delek's term refers to the principle that unless Congress specifies otherwise, a credit cannot be taxed as income. This principle springs from Supreme Court precedent. In *Loftsgaarden*, the Supreme Court held that "[u]nlike payments in cash . . . the 'receipt' of tax deductions or credits is not itself a taxable event." 478 U.S. at 657. And thus, "imputing to Congress an intent to describe" credits as income requires "compelling evidence." *Id.*; *see also Tempel*, 136 T.C. at 350 ("A reduction in a tax liability is not an accession to wealth.").

But there is just one problem. No one is saying anything about levying a tax. The government's position is simply this: Delek must accept "the reality" that it paid a reduced

excise tax amount.  (Appellee Br. at 52.)  Of course, because the excise tax is a production cost, accepting the government's position has the indirect, downstream effect of increasing Delek's income tax burden.  But characterizing this attenuated relationship as a "tax" on the Mixture Credit is odd.  As the district court put it: "While a change in production cost undeniably affects taxable income, this is not the same as taxing the credit as income."  *Delek*, 515 F. Supp. 3d at 818.  Indeed, taken to its logical conclusions, Delek's proposed rule would bar *every* factor that can end up indirectly affecting final tax liability.  That is quite the sweeping proposition, with no caselaw support to boot.

More fundamentally, Delek's argument boils down to a self-refuting proposition: *A tax cut is a tax.*  The government gave Delek a benefit: a reduction of its excise tax burden.  Delek accepted that benefit, but now it claims that the government levies an unlawful tax unless it accepts Delek's fiction that no tax reduction ever occurred.  At no point does Delek engage with this fundamental defect.[5]  So Delek's "default exclusion rule" argument fails just the same.

---

[5] Instead, Delek offers some irrelevant citations.  For example, it cites § 45H, which provides for an *income* tax credit to taxpayers that produce low sulfur diesel fuel.  To prevent a double benefit, Congress also enacted § 280C(d), which bars business expense deductions that overlap with the § 45H credit.  And since § 6426 doesn't come with its own version of § 280C(d), Delek says, the "default exclusion rule" controls.  But this is an odd analogy.  The Mixture Credit itself reduces a deductible (the excise tax).  And so it would make no sense for § 6426 to be paired with a § 280C(d)-equivalent.  Delek's citations to former §§ 46 and 48(g)(1) are similarly inapposite since these operated in the same way (income tax credit plus reduction in deductions).

Delek also cites former §§ 6429 and 280D.  These provisions linked up with former § 4986(a), which imposed a windfall-profit excise tax against oil producers.  Section 6429 provided a credit for qualifying royalty owners who were on the hook for the windfall-profit excise tax.  Unlike the Mixture Credit, the entire sum of the § 6429 credit constituted "an overpayment" of the taxpayer's liability.  26 U.S.C. § 6429(a) (repealed 1988).  That meant taxpayers could choose to recover all of it as a refund.  Since the full excise tax amount was deductible, a royalty owner could end up benefitting from both the deductible and a refunded § 6429 credit.  To close off this double benefit, Congress enacted § 280D, which prevented taxpayers from deducting their windfall-profit excise tax to the extent it overlapped with the § 6429 credit.  Delek says the "default exclusion rule" bars the government's interpretation because § 6426 has no § 280D-equivalent.  But unlike a § 6429 overpayment, the Mixture Credit is calculated into the liability itself and "thereby reduces that tax liability in the first instance."  (Appellee Br. at 57.)  So the double-benefit danger of the sort created by § 6429 never arises in the first place.  This means a § 280D-equivalent makes little sense here.  And even if it were otherwise, none of this explains how a tax reduction is a tax.

Delek invokes *Centex Corp. v. United States* as well.  395 F.3d 1283 (Fed. Cir. 2005).  The holding in that case turned on a "series of statutory provisions enacted in the 1980s and early 1990s that specifically addressed [Federal Savings and Loan Insurance Corporation]-assisted acquisitions."  *Id.* at 1295.  Within that narrow context, Congress carved out an exception from the "general principle" against double tax benefits.  *Id.* at 1294-95.  Delek wants *Centex* to mean that taxpayers can always double dip on tax benefits unless Congress says otherwise.  But the unusual carve-out in *Centex* applies only to FSLIC-assisted acquisitions.  So it is inapposite here.

Finally, Delek says legislative history supports its interpretation. But because the statutory text here is clear, we need not undertake an excavation of Congressional paper trails. After all, we "may resort to a review of congressional intent or legislative history *only when the language of the statute is not clear*." *In re Comshare Inc. Sec. Litig.*, 183 F.3d 542, 549 (6th Cir. 1999) (emphasis added); *see also United States v. Woods*, 571 U.S. 31, 46 n.5 (2013) ("Whether or not legislative history is ever relevant, it need not be consulted when . . . the statutory text is unambiguous."). It's enough for us to reiterate that "Congress says what it means and means what it says." *United States v. Jackson*, 995 F.3d 522, 523 (6th Cir. 2021); *Norfolk S. Ry. Co. v. Perez*, 778 F.3d 507, 512 (6th Cir. 2015). With the text as our guide, we conclude that Delek paid a reduced excise tax liability.

IV.

For these reasons, we AFFIRM.