# United States Tax Court

160 T.C. No. 11

GROWMARK, INC. & SUBSIDIARIES,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 23797-14.                          Filed May 16, 2023.

————————

P, a fuel blender, is allowed tax credits under I.R.C. § 6426(b) and (c) for fuel mixtures it blended. P claimed the tax credits in determining its excise tax liability and paid its excise tax liability as reduced by those credits (actual excise tax expense). As a fuel blender, P may reduce its taxable income from fuel mixture sales by subtracting its cost of goods sold (COGS), including certain federal excise taxes. As part of its COGS, P originally claimed its actual excise tax expense. P asserts in its Petition that it should have claimed its gross excise tax liability, unreduced by the tax credits it received, as part of its COGS. R asserts that for purposes of calculating its COGS, P correctly included its actual excise tax expense.

*Held:* P may claim as part of its COGS only that excise tax which it actually incurred or paid. Thus, the amount of fuel excise tax includible in P's COGS is reduced by the amount of the tax credits P claimed and received under I.R.C. § 6426(b) and (c).

*Held, further*, legislative history confirms P must use its actual excise tax expense, rather than gross excise tax liability, for purposes of calculating its COGS.

————————

**Served 05/16/23**

*George William Benson, Andrew R. Roberson*, and *Thomas Kevin Spencer*, for petitioner.

*Justin D. Scheid, Rogelio A. Villageliu, Tess deLiefde*, and *James M. Cascino*, for respondent.

PARIS, *Judge*: This case is before the Court to decide petitioner's affirmative allegation. All issues in the notice of deficiency were decided in *Growmark, Inc. & Subs. v. Commissioner*, T.C. Memo. 2019-161.

In a timely notice of deficiency, respondent determined deficiencies with respect to issues other than petitioner's COGS calculation in petitioner's 2009 and 2010 federal income tax of $461,696 and $2,958,319, respectively.[1] Petitioner—in addition to challenging respondent's adjustments in the notice of deficiency—alleged in its Petition that it may reduce its reported taxable income for 2009 and 2010 by $6,938,292 and $7,329,491, respectively, on the basis that it incorrectly calculated its COGS for each of those years by using its actual (net) excise tax expense instead of its gross excise tax liability. Thus, the only issue to be decided in this Opinion is whether a taxpayer that claims a credit against fuel excise tax under section 6426(b) or (c) may also claim as part of its COGS its gross excise tax liability, unreduced by the amount of the credit it received. We conclude that a taxpayer may not.

Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C. (Code), in effect at all relevant times, all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The First Stipulation of Facts and the attached Exhibits are incorporated herein by this reference.

---

[1] Petitioner's tax year ran from September 1 to August 31, so the tax years at issue were from September 1, 2008, to August 31, 2010. For ease of discussion the Court will refer to the tax years at issue as 2009 and 2010.

Petitioner is an affiliated group of corporations that includes parent company Growmark, Inc. (Growmark), a Delaware corporation, and several subsidiaries. Growmark is an agricultural cooperative that, as relevant here, sells gasoline and diesel fuel, renewable fuels, alcohol fuel mixtures, and biodiesel mixtures. Petitioner's principal place of business was in Illinois when it timely petitioned this Court for redetermination of the deficiencies set forth in the notice of deficiency.

Petitioner has been selling fuel products since 1927. It added renewable fuels including ethanol, an alcohol produced from corn, in the 1970s and biodiesel, a fuel produced typically from soybean oil, in 2000. During the years at issue petitioner also owned and operated a "terminal"[2] in Illinois and was a "position holder"[3] at that and other terminals, both within the meaning of Treasury Regulation § 48.4081-1(b). In addition, petitioner produced and sold in its trade or business alcohol fuel mixtures by blending taxable gasoline with ethanol[4] as well as biodiesel mixtures by blending diesel fuel with soybean-oil "agri-biodiesel."[5]

Petitioner incurred a section 4081 fuel excise tax liability when it removed a taxable fuel that it owned as a position holder from a rack at a terminal. Petitioner also incurred a section 4081 fuel excise tax liability with respect to the gallons of ethanol and biodiesel when it removed and sold the ethanol or biodiesel as part of an alcohol fuel mixture or biodiesel mixture. During the years at issue the excise tax reflected petitioner's fuel mixtures for sale to third parties for use as fuel; petitioner did not use any of the mixtures it produced for sale as fuel in its trade or business.

---

[2] Treasury Regulation § 48.4081-1(b) defines "terminal" as "a taxable fuel storage and distribution facility that is supplied by pipeline or vessel and from which taxable fuel may be removed at a rack." "Rack" is defined as "a mechanism capable of delivering taxable fuel into a means of transport other than a pipeline or vessel." *Id.*

[3] "Position holder" means "the person that holds the inventory position in the taxable fuel [in a terminal], as reflected on the records of the terminal operator. . . . The term also includes a terminal operator that owns taxable fuel in its terminal." Treas. Reg. § 48.4081-1(b) (emphasis omitted).

[4] During the years at issue petitioner was registered under section 4101 to perform the activities described in this Opinion.

[5] "Agri-biodiesel" is "biodiesel derived solely from virgin oils, including esters derived from virgin vegetable oils from corn, soybeans, sunflower seeds, cottonseeds, canola, crambe, rapeseeds, safflowers, flaxseeds, rice bran, mustard seeds, and camelina, and from animal fats." § 40A(d)(2).

During the years at issue the ethanol that petitioner produced and then blended with taxable fuel was eligible for either the alcohol fuel mixture excise tax credit under section 6426(a)(1) and (b) or the alcohol mixture income tax credit under section 40(a)(1). The agri-biodiesel that petitioner produced and then blended with diesel was also eligible for either the biodiesel mixture excise tax credit under section 6426(a)(1) and (c) or the biodiesel mixture income tax credit under section 40A(a)(1) for each gallon of biodiesel that was blended with diesel fuel. Both fuel mixture credits required the fuel to be sold or used as a fuel in a trade or business of the taxpayer.[6] Petitioner was eligible for—but did not elect to use—the income tax credits under sections 40 and 40A. Instead, petitioner claimed the alcohol fuel and biodiesel mixture excise tax credits under section 6426 for all of the alcohol fuel and biodiesel mixtures it produced and sold during 2009 and 2010. It did so because claiming the section 6426 excise tax credits against its section 4081 excise tax liabilities was administratively easier than using the income tax credits and provided a quarterly financial benefit, as opposed to the annual financial benefit that would have been provided by general business credits claimed on an income tax return. Petitioner's entitlement to these credits is not in dispute.

As a taxable fuel position holder, petitioner was required to, and did, file Form 720, Quarterly Federal Excise Tax Return, for each of the quarters beginning or ending within its tax years 2009 and 2010. During all relevant periods petitioner claimed the mixture credits on its Forms 720. Petitioner's excise tax credits and liabilities for 2009 and 2010 were as follows:

|  | *2009* | *2010* |
|---|---|---|
| Incurred excise tax liabilities under section 4081 | $117,389,516.97 | $122,062,070.30 |

[6] The tax imposed by section 4081 does not apply to diesel fuel dyed red and used for agricultural purposes. *See* § 4082. This Opinion does not address the excise tax COGS calculation of a fuel blender that is otherwise liable for tax under section 4081 but that generates mixture credits described in section 6426 in that blender's trade or business solely by blending into nontaxable fuels (e.g., into dyed diesel fuel).

| | | |
|---|---|---|
| Claimed alcohol fuel mixture credits under section 6426(b)[7] | 6,928,160.00 | 7,324,661.00 |
| Claimed biodiesel mixture credits under section 6426(c)[8] | 10,132.00 | 4,380.00[9] |

For each year at issue, petitioner timely filed (under extension) Form 1120–C, U.S. Income Tax Return for Cooperative Associations. On each Form 1120–C, petitioner included in its COGS its actual excise tax expense—petitioner's reported excise tax liability reduced by the amount of tax credits petitioner was allowed under section 6426. As a result, petitioner's COGS was lower, and its taxable income higher, than it would have been had its excise tax liability not been reduced by the tax credits it received.[10]

Respondent timely issued to petitioner a notice of deficiency on July 16, 2014, determining deficiencies of $461,696 and $2,958,319 for 2009 and 2010, respectively, with respect to the issues set forth in the notice—i.e., issues other than petitioner's COGS calculation. Petitioner timely filed its Petition, alleging error and raising an affirmative allegation as to the excise tax COGS calculation.

---

[7] From September 1 through December 31, 2008, the credit under section 6426(b) for the alcohol fuel mixture credit was $0.51 per gallon of alcohol used in the mixture; the same credit was $0.45 from January 1, 2009, through August 31, 2010. The alcohol fuel mixture credit expired at the end of 2011. § 6426(b)(6).

[8] The biodiesel mixture credit expired temporarily at the end of 2009. *See* Energy Improvement and Extension Act of 2008, Pub. L. No. 110-343, div. B, § 202(a), 122 Stat. 3765, 3807, 3832. As a result, petitioner did not claim biodiesel credits on its quarterly Forms 720 for any of the calendar quarters of 2010. The biodiesel mixture credit was subsequently retroactively extended through 2011 by the Tax Relief, Unemployment Insurance Reauthorization, and Job Creation Act of 2010, Pub. L. No. 111-312, § 701(b)(1), 124 Stat. 3296, 3310. The credit has since been extended a number of times, most recently through 2024. *See* Inflation Reduction Act of 2022 (2022 IRA), Pub. L. No. 117-169, § 13201(b), 136 Stat. 1818, 1931–32.

[9] This amount relates to credits claimed and used on petitioner's Forms 720 for the third and fourth calendar quarters of 2009.

[10] To calculate its COGS petitioner first netted the excise taxes it paid with the excise taxes that it collected when it sold the fuel.

OPINION

The sole legal question addressed in this second *Growmark* Opinion is whether a taxpayer that claims a credit against fuel excise tax under section 6426(b) or (c) may also claim as part of its COGS its gross excise tax liability, unreduced by the amount of the credit it received.

I.    *Standard of Review*

Generally, the Commissioner's determinations in a statutory notice of deficiency are presumed correct, and the taxpayer bears the burden of disproving each adjustment by a preponderance of the evidence. Rule 142(a)(1); *Welch v. Helvering*, 290 U.S. 111, 115 (1933). There is no presumption against petitioner's affirmative allegations with respect to its COGS calculation, however, because the deficiencies in the notice of deficiency were determined with respect to other issues. Petitioner must nevertheless meet its burden of proof with respect to the allegations.

II.    *Background*

A.    *COGS*

In the case of a taxpayer that produces and sells inventory in its trade or business, "gross income" includes "the total sales, less the cost of goods sold." Treas. Reg. § 1.61-3(a). In calculating its gross income, the taxpayer may subtract otherwise deductible expenses. Treas. Reg. § 1.446-1(c)(1)(ii).

Although federal excise taxes are generally not deductible under section 164 as taxes paid, those that are "paid or accrued by the taxpayer in connection with an acquisition or disposition of property shall be treated as part of the cost of the acquired property or, in the case of a disposition, as a reduction in the amount realized on the disposition," and, therefore, fuel excise taxes may be included in a taxpayer's COGS calculation. § 164(a) (flush language); *see also Mohawk Liqueur Corp. v. United States*, 324 F.2d 241, 244 (6th Cir. 1963); Treas. Reg. § 1.164-2(f) (providing that excise taxes may constitute deductible expenses under section 162 or 212); Treas. Reg. § 1.263A-1(e)(3)(i), (ii)(L).

Expenses may be deducted only if actually incurred. *See Affiliated Foods, Inc. v. Commissioner*, 128 T.C. 62, 80 (2007); Treas. Reg. § 1.461-4(g)(6); Rev. Rul. 85-30, 1985-1 C.B. 20; Rev. Rul. 84-41, 1984-1 C.B. 130.

B.  *Fuel Excise Taxes*

Section 4081(a)(2) imposes a tax on gasoline and diesel fuel of 18.3 cents per gallon and 24.3 cents per gallon, respectively.[11] Section 4041 imposes a tax on fuels not taxed under section 4081. These federal excise taxes are paid into the Highway Trust Fund, from which expenditures are made to support federal highway programs. *See* § 9503(b) and (c); *see also* Cong. Budget Off., *Financial Options for the Highway Trust Fund* 19 (Dec. 1982).

III.  *Fuel Tax Credits*

On account of the significant changes made by the American Jobs Creation Act of 2004 (AJCA), Pub. L. No. 108-357, 118 Stat. 1418, we will consider the relevant fuel tax credits before and after enactment of the AJCA.

A.  *Pre-AJCA*

Before enactment of the AJCA, alcohol fuel blenders could claim either (1) a reduced excise tax rate under section 4081(c) for fuels sold or used before December 31, 2004, using taxable fuels mixed with alcohol under regulations prescribed by the Secretary or (2) an income tax credit under section 40, which would then be includible in gross income under section 87. An alcohol fuel blender taking advantage of the reduced excise tax rate under section 4081(c) incurred fuel excise tax liability at the lower rate when it broke bulk—that is, removed a taxable fuel that it owned as a position holder from a terminal rack. *See* Treas. Reg. § 48.4081-6(c). So long as the blender produced the alcohol fuel mixture within 24 hours of removing the taxable fuel, it was never subject to, nor did it pay, fuel excise tax at the higher (full) rate. *See id.* subpara. (1)(i).[12] Additionally, if the full rate of tax was imposed on gasoline that was later used to produce a qualified alcohol blend, section 6427(f) permitted the taxpayer to obtain a refund. The excise taxes collected were appropriated to the Highway Trust Fund. *See* § 9503(b).

---

[11] These rates exclude an additional tax of one-tenth of 1 cent per gallon paid into the Leaking Underground Storage Tank (LUST) Trust Fund. §§ 4041(d), 4081(a)(2)(B). Because it is not material to our analysis, we will not discuss this additional tax again in this Opinion.

[12] Reduced excise tax rates for the fuel blends ranged from 15.436 cents per gallon for 5.7% ethanol blends to 13.200 cents per gallon for 10% ethanol blends, inclusive of the additional LUST tax.

Because of the coordination between the income tax and excise tax systems, the net tax savings to the blender—when compared to a nonblender—for a blend percentage identified in section 4081(c)(4) was generally the same whether the blender chose the alcohol fuel income tax credit or the reduced excise tax rate.[13]

Before the AJCA, section 6427 generally allowed persons who used previously taxed fuel for a nontaxable purpose or resold it to obtain a refund equal to the amount of the excise tax paid.[14] Section 34(a)(3) allowed a payment made under section 6427 to be used as a refundable credit against income taxes.

B.    *Post-AJCA*

The AJCA revised and restructured the incentives for producing alcohol fuel mixtures. It eliminated reduced rates of excise tax for specific blends of alcohol fuel mixtures and taxed the mixtures at gasoline excise tax rates. The AJCA replaced the prior benefit of the reduced rate with a credit under section 6426 that could be applied against excise tax imposed under section 4081. AJCA § 301(a), (c)(7), 118 Stat. at 1459–61. It tied the new excise tax credit to the gallons of alcohol used to produce any taxable fuel for sale or use in a taxpayer's trade or business, not the alcohol fuel mixture produced. *Id.* Additionally, the AJCA extended the existing income tax credit for alcohol fuel mixtures through December 31, 2010. *Id.* § 301(c)(3), 118 Stat. at 1461. It also created new incentives for the production of biodiesel mixtures by adding an income tax credit for biodiesel mixtures and making those mixtures eligible for the credit against excise taxes. *Id.* §§ 301(a), 302(a), 118 Stat. at 1459–61, 1463. Section 87 was also amended to include the amount of the biodiesel income tax credit in the taxpayer's gross income.

---

[13] The timing could be different. Excise taxes are paid quarterly, so a reduced excise tax rate could result in immediate savings when compared to the income tax credit. Additionally, a blender that produced a blend percentage other than one specifically listed in section 4081(c)(4) (i.e., a 5.7%, 7.7%, or 10% blend) would not be eligible for reduced excise tax rates. Consequently, a blender that produced 10% blends was never allowed under prior law to deduct fuel excise tax in excess of 13.2 cents per gallon as part of its costs for the gallons it produced.

[14] Generally the position holder is liable for the excise tax at the time fuel is removed from the terminal rack. In the refund situation contemplated under section 6427 the purchaser would not be directly liable for the excise tax. Rather, the excise tax would have been embedded in the price the purchaser paid for the fuel. Thus, the "refund" allowed under section 6427 would be a payment to the purchaser equal to the amount of excise tax for which the position holder was liable but that the purchaser ultimately paid through an increased purchase price.

*Id.* § 302(c), 118 Stat. at 1465. The AJCA also added section 6427(e), a credit not tied to taxable fuels. *Id.* § 301(c)(9), 118 Stat. at 1462.[15]

The AJCA appropriated the full 18.3- or 24.3-cent-per-gallon fuel tax on alcohol fuel and biodiesel mixtures, respectively, to the Highway Trust Fund and repealed the existing provisions under which the General Fund retained a portion of the excise taxes. *See id.* § 301(c)(11) and (12), 118 Stat. at 1462–63.[16] The amendment to section 9503 provided that "[f]or purposes of this paragraph, taxes received under sections 4041 and 4081 shall be determined without reduction for credits under section 6426." *Id.* § 301(c)(11). The AJCA further modified section 9503 so that any payments made under section 6427(e) were paid out of the General Fund rather than the Highway Trust Fund. *Id.* § 301(c)(13), 118 Stat. at 1463.

During the years at issue there generally were three ways to claim the credits: (1) using the credits on Form 720 or Form 720–X, Amended Quarterly Federal Excise Tax Return, against excise taxes; (2) filing Form 8849, Claim for Refund of Excise Taxes; or (3) using the credits against income tax by filing Form 4136, Credit for Federal Tax Paid on Fuels. Extensive coordination provisions were put into place to ensure that the credits could be claimed only once, either as income or excise tax credits or as tax refunds. *See* §§ 40(c), 40A(c), 6426(g), 6427(e)(3), 34(b).

IV.    *Tax Treatment of Section 6426 Credits*

The issue at hand is whether a taxpayer that claims a credit against fuel excise tax under section 6426(b) or (c) may also claim as part of its COGS its gross excise tax liability, unreduced by the amount of the credit. Petitioner argues that the section 6426 excise tax credit does not reduce excise tax expenses for COGS purposes. To hold otherwise, petitioner contends, would devalue the credit for taxpayers that claim the credit under section 6426 instead of section 6427(e) or section 34(a)(3). Petitioner contends that had it chosen to claim its excise tax credits on Form 8849 or on Form 4136, it would have been able to include its full excise tax liability in its COGS and would have received

---

[15] All of the fuel mixtures in this matter were blended with taxable fuels.

[16] For a period of time the General Fund retained 2.5 cents of ethanol's reduced excise tax rates for deficit reduction. The AJCA also terminated that retention mechanism.

the full benefit of the credits.[17] Respondent, relying on his interpretation of what he asserts is unambiguous statutory text, contends that as a fuel blender, petitioner's COGS includes actual excise tax expense, which is reduced by the amount of any excise tax credits petitioner received. As respondent sees it, petitioner must first apply the mixture credits under section 6426(b) and (c) against its fuel excise tax liabilities, and to the extent petitioner's credit allowed under section 6426(a) exceeds its fuel excise tax liability, it may request a refund under section 6427(e) or take a refundable credit against its income taxes under section 34(a)(3).

A.    *Text*

As an initial matter the Court looks to the text of the statutory provisions at issue. In construing a statute, the Court generally gives effect to the plain and ordinary meaning of its terms. *United States v. Locke*, 471 U.S. 84, 93 (1985). This Court will look beyond the plain meaning of a statute only where the text is ambiguous, where applying the plain meaning would lead to an absurd result, or possibly where there is clear evidence of contrary legislative intent. *Pollock v. Commissioner*, 132 T.C. 21, 30 (2009).

Section 6426(a)(1) provides that "[t]here shall be allowed as a *credit . . . against the tax imposed* by section 4081." (Emphasis added.) The relevant words "allowed as a credit against the tax imposed" appear several times throughout the Code but are not defined. The alcohol fuel mixture income tax credit under section 40 and the biodiesel mixture income tax credit under section 40A are general business credits, and each is "allowed as a credit against" income tax pursuant to section 38. The credits operate to reduce, not satisfy, the claimant's income tax liability.[18] Similarly, section 4081(b)(2) provides that where tax was previously imposed upon the removal or sale of a taxable fuel, and a blender is later taxed on the fuel blend, the amount of tax previously paid "shall be allowed as a credit against the tax imposed" on the

---

[17] As discussed, a taxpayer's excise taxes are part of its COGS deduction.

[18] As general business credits, sections 40 and 40A are taken into account in determining total income tax liability. They differ from refundable credits, which are treated as payments and applied to the total income tax liability determined. Where Congress has intended for specific general business credits to be treated as deemed payments, it has done so expressly. *See, e.g.*, 2022 IRA § 13801(a), 136 Stat. at 2003–09 (codified at § 6417).

blender.[19] The "credit" in section 4081(b)(2) reduces the blender's excise tax amount under section 4081(b)(1) and is not, as petitioner would have it, a payment of that amount.[20] Thus, the Court concludes that the words "allowed as a credit against the tax imposed," as used in section 6426, refer to a reduction of the tax liability as opposed to an independent payment of the liability.

Moreover, section 9503(b)(1) provides that for purposes of determining the amount transferred into the Highway Trust Fund, taxes received under section 4081 "shall be determined without reduction for credits under section 6426." If the credits under section 6426 did not reduce excise tax liability generally, the statement describing the determination of section 4081 taxes for purposes of section 9503(b) would be superfluous. When construing a statute, the Court must interpret it "so as to avoid rendering any part of the statute meaningless surplusage." *15 W. 17th St. LLC v. Commissioner*, 147 T.C. 557, 586 (2016).

Finally, section 6427(e)(3) provides: "No amount shall be payable under paragraph (1) or (2) with respect to any mixture or alternative fuel with respect to which an amount is allowed as a credit under section 6426." An amount is allowed as a credit under section 6426 against the taxpayer's excise tax liability under section 4041 or section 4081. Thus, the text of section 6427(e)(3) suggests that a taxpayer may not take a section 6427(e) payment before its excise tax liability has been reduced to zero but may do so to the extent any excess credit remains.

Three courts of appeals have reached a similar conclusion based on the plain meaning of the statutory provisions at issue. *See Exxon Mobil Corp. v. United States*, 43 F.4th 424 (5th Cir. 2022); *Delek US*

---

[19] For instance, a blender that removes gasoline at the rack and then later blends it with ethanol for sale is initially taxed on the gasoline at the time of removal under section 4081(a). Then upon later sale of the fuel blend the blender is taxed under section 4081(b). When calculating its excise tax liability, the blender is allowed as a credit against the section 4081(b) tax the amount previously paid under section 4081(a).

[20] Petitioner points to several provisions in the Code under which a credit is treated as a payment of the taxpayer's tax liability and argues that the meaning of the words "allowed as a credit against the tax imposed" depends on the context in which they are used. The Court agrees that, pursuant to the canons of statutory construction, the Court must consider when construing statutory text "the specific context in which that language is used, and the broader context of the statute as a whole." *Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997). Here, the relevant context comprises the statutory provisions related to fuel excise taxes and mixture credits.

*Holdings, Inc. v. United States*, 32 F.4th 495 (6th Cir. 2022), *aff'g* 515 F. Supp. 3d 812 (M.D. Tenn. 2021); *Sunoco, Inc. v. United States*, 908 F.3d 710 (Fed. Cir. 2018), *aff'g* 129 Fed. Cl. 322 (2016). Moreover, including these courts, a total of six courts agree, with some nuances in analysis, that section 6426 credits reduce excise tax liability and thus make excise tax deductible only to the extent paid out of pocket. *See Delek US Holdings*, 515 F. Supp. 3d 812; *Exxon Mobil Corp. v. United States*, No. 3:16-CV-2921-N, 2018 WL 4178776 (N.D. Tex. Aug. 8, 2018); *Sunoco*, 129 Fed. Cl. 322.[21] Stated differently, there is agreement among these previous court decisions that petitioner's affirmative allegation would fail.

Although there is no precedent on this issue that we would follow, *see Golsen v. Commissioner*, 54 T.C. 742, 756–57 (1970), *aff'd*, 445 F.2d 985 (10th Cir. 1971),[22] we do find persuasive the reasoning of these courts, which focuses overwhelmingly on the statutory text and structure. Further, because this Court has not previously addressed this issue, we need not overturn any of our own precedent. *Cf. Analog Devices, Inc. & Subs. v. Commissioner*, 147 T.C. 429, 443–45 (2016).

The arguments petitioner and respondent have proffered are substantively similar to those the parties made in *Exxon*, *Sunoco*, and *Delek*. Consistent with those courts and giving effect to the plain meaning of the statutory text at issue, this Court agrees with respondent for purposes of calculating petitioner's COGS. Accordingly, this Court also concludes that when considering the text of all of the relevant provisions together, the credits produced from fuel mixtures for sale in the trade or business of the fuel blender are first used, to the extent of excise tax owed, to reduce excise tax liability. Only then are those credits refundable payments to the extent of any excess.

B.    *Legislative Intent*

Even if petitioner's argument were not unambiguously foreclosed by statute, the Court's construction of the text here is consistent with the legislative intent of the AJCA—that is, to provide an equivalent benefit to replace the reduced prior-law excise tax rates for alcohol fuel

---

[21] Sunoco was also litigating this issue in another circuit but was barred by collateral estoppel. *ETC Sunoco Holdings, LLC v. United States*, 36 F.4th 646 (5th Cir. 2022) (affirming a district court's ruling granting summary judgment).

[22] This case is appealable to the U.S. Court of Appeals for the Seventh Circuit. *See* § 7482(b)(1)(B).

mixtures, as well as to create a similar benefit for biodiesel mixtures, while protecting the solvency of the Highway Trust Fund. *See* H.R. Rep. No. 108-755, at 308 (2004) (Conf. Rep.), *as reprinted in* 2004 U.S.C.C.A.N. 1341, 1384–85. In enacting the AJCA, Congress recognized that the reduced excise tax rates were contributing to the depletion of the Highway Trust Fund.[23] The AJCA resolved that issue by crediting the Highway Trust Fund for the full 18.3- or 24.3-cent-per-gallon fuel tax imposed on blenders, without regard to the credit. § 9503(b). The AJCA provided both for excise tax credit and for payment of any refunds claimed pursuant to section 6427 from the General Fund rather than the Highway Trust Fund. § 9503(c)(2)(A).

However, in seeking to fix an accounting and highway funding issue, at no point did Congress suggest it wanted to substantially enhance the benefits provided by the excise tax credit. In fact, Congress repeatedly stated it sought to provide an "equivalent benefit" to replace the partial excise tax exemption for alcohol fuel mixtures, which necessarily included refundability of excess credits to yield equivalent cashflow consequences for blenders, in particular those whose section 6426 excise tax credits exceeded their section 4081 liabilities. *See* H.R. Rep. No. 108-755, at 304, 2004 U.S.C.C.A.N. at 1381. Under respondent's interpretation of the AJCA, an equivalent benefit is exactly what is provided.

Prior law allowed fuel blenders that produced a blend percentage listed in section 4081(c)(4) to claim a COGS offset in the amount of the reduced excise tax paid. Current law under respondent's interpretation allows a COGS offset in the amount of excise tax actually paid—gross excise tax liability reduced by any tax credits received under section 6426(b) or (c). These two COGS offsets are mathematically and

---

[23] In 2005 Congress passed the Energy Policy Act of 2005, Pub. L. No. 109-58, § 1501(a)(2), 119 Stat. 594, 1068, which mandated the inclusion of a minimum volume of renewable fuels in gasoline sold or introduced into commerce in the United States. It mandated that 6.1 and 6.8 billion gallons of renewable fuel be introduced into the nation's fuel supply during 2009 and 2010, respectively. *Id.* at 1069. The creation of a renewable fuel mandate around the same time as the modification of the fuel excise tax system further supports the Court's reading of the AJCA. It seems contradictory to suggest that blenders were given an additional tax incentive (beyond that which existed under the pre-AJCA reduced rate excise tax regime) to do something that they were now legally obligated to do.

economically equivalent for producers of blend percentages that were listed under prior law and thus yield the same tax benefit.[24]

Petitioner's interpretation of section 6426 would deliver a larger tax benefit by giving taxpayers the benefit of the credit plus a COGS offset that exceeds their actual net fuel costs by the amount of the credit (in effect both a credit and a deduction or offset against gross income). Had Congress intended to increase the benefit of the mixture credit, it would have modified or eliminated the requirement to include the section 40 income tax credit in gross income. Instead, Congress maintained the pre-AJCA tax consequences of the income tax credit (both for the existing section 40 credit and the new section 40A credit for biodiesel mixtures), namely that the credit was required under section 87 to be included in income and was thus taxable. By allowing the section 6426 excise tax credit to satisfy excise tax liability but not reduce excise tax expense for purposes of COGS, as petitioner contends, Congress would be creating imbalance where it originally sought to, and did, provide "the same net tax effect." *See* Staff of J. Comm. on Tax'n, 96th Cong., General Explanation of the Crude Oil Windfall Profit Tax Act of 1980, JCS-1-81, at 92 n.3 (J. Comm. Print 1981).[25] Absent an explicit statement to this effect, we are not prepared to adopt an interpretation directly contrary to Congress's original intent.

Two additional pieces of legislative history bolster our conclusion. First, according to the AJCA Conference Report, "[t]he benefit obtained from the excise tax credit is coordinated with the alcohol fuels income tax credit." H.R. Rep. No. 108-755, at 304, 2004 U.S.C.C.A.N. at 1381. Second, the Joint Committee on Taxation estimated the "excise tax credit (in lieu of reduced tax rate on gasoline)" not to have any revenue effect—that is, to cost no more or less than the benefit under existing law. Staff of J. Comm. on Tax'n, 108th Cong., Estimated Budget Effects of the Conference Agreement for H.R. 4520, the "American Jobs

---

[24] In fact, under respondent's interpretation of the AJCA, taxpayers always receive at least an equivalent tax benefit, and fuel blenders that produce non-statutorily defined blends receive a better one (as they now receive credit for every gallon of ethanol blended). Petitioner was also a fuel blender of statutorily defined blends. *See supra* notes 13 and 14 and accompanying text.

[25] Created by the Revenue Act of 1926, ch. 27, § 1203, 44 Stat. 9, 127–28, the Joint Committee on Taxation (JCT) is a joint congressional committee authorized today under section 8001. JCT's membership and legislative duties and powers, which are largely unchanged since 1926, are further prescribed in sections 8002 through 8005 and sections 8021 through 8023.

Creation Act of 2004," JCX-69-04, at 2.[26] Yet petitioner's interpretation would render both of these statements false. An excise tax credit that satisfies excise tax liability but does not reduce COGS, as petitioner seeks, would not be coordinated with an income tax credit that is includible in income. And, as an increased benefit, such a credit could not be enacted without negative revenue effect—that is, without the federal government's losing tax revenue beyond that lost under the prior-law reduced excise tax rates.[27]

To overcome this legislative history, petitioner alleges this Court should rely on a Congressional Research Service (CRS) report as the authoritative interpretation of the AJCA changes.[28] However, a CRS report is not legislative history. As the Supreme Court has "repeatedly" said, "the authoritative source for finding the Legislature's intent lies in the Committee Reports on the bill, which 'represen[t] the considered and collective understanding of those Congressmen involved in drafting and studying proposed legislation.'" *Garcia v. United States*, 469 U.S. 70, 76 (1984) (quoting *Zuber v. Allen*, 396 U.S. 168, 186 (1969)). Here, the relevant Conference Report[29] provides an unambiguous answer to the

___

[26] JCT's revenue estimates are the official revenue estimates for tax legislation considered or enacted by Congress. Congressional Budget Act of 1974, Pub. L. No. 93-344, 88 Stat. 297, 299, *amended by* Balanced Budget and Emergency Deficit Control Act of 1985, Pub. L. No. 99-177, § 273, 99 Stat. 1037, 1038, 1098 (now codified at 2 U.S.C. § 601(f)).

[27] This is so because demand for the credit would increase relative to demand for the partial excise tax exemption under prior law.

[28] Salvatore Lazzari, Cong. Rsch. Serv., RL32979, *Alcohol Fuels Tax Incentives* (2005); *see also* Molly F. Sherlock, Cong. Rsch. Serv., R41227, *Energy Tax Policy: Historical Perspectives on and Current Status of Energy Tax Expenditures* 23 nn.44 & 45 (2011) (including Lazzari's 2005 work without further analysis).

[29] Under the Standing Rules of the U.S. House of Representatives and the U.S. Senate, differences in major legislation passed by both chambers are usually resolved by conference committee. *See, e.g.*, Senate Rule XXVIII. Assuming an agreement is reached to resolve all differences, the conferees file a Conference Report, which includes compromise legislative text and a joint explanatory statement. *See id.* The Conference Report is then acted upon by the House and Senate and, if adopted by both chambers, sent to the President to be signed into law. Given its unique procedural setting, many believe a Conference Report to be the most important source of legislative history. *See* Richard J. McKinney & Ellen A. Sweet, *Federal Legislative History Research: A Practitioner's Guide to Compiling the Documents and Sifting for Legislative Intent*, *in Law Librarians' Society of Washington, D.C., Legislative Source Book* (2001), https://www.llsdc.org/federal-legislative-history-guide ("Normally, an explanatory statement in a conference report is the first item to be reviewed in a legislative history.").

issue, so we need not turn to other, less authoritative documents to ascertain congressional intent. *See Commissioner v. Acker*, 361 U.S. 87, 94 (1959) (Frankfurter, Clark & Harlan, JJ., dissenting) (stating, in criticism of the overbroad use of legislative history, that "[t]he most authoritative report is a Conference Report acted upon by both Houses and therefore unequivocally representing the will of both Houses as the joint legislative body").

Having considered petitioner's and respondent's arguments, we conclude that much like a general business credit being used to determine total income tax liability, the excise tax credit is taken into account to determine the total excise tax liability and is therefore the equivalent benefit described in and passed under the AJCA.[30] Therefore, we do not agree with petitioner and the result it seeks. Instead, we will honor unambiguous statutory text and clear congressional intent and decline to accept petitioner's position.

The Court has considered all of the arguments made by the parties, and to the extent they are not addressed herein, they are considered unnecessary, moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered under Rule 155.*

---

[30] Petitioner's interpretation would be correct only if Congress had decided to make the tax credit at issue a truly refundable tax credit. There is no evidence suggesting that intent.