# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

S. CHRISTOPHER NEY,  )
                     )
        Plaintiff,  )
                     )
      v.  )   C.A. No. N24C-08-357 PAW CCLD
                     )
3i GROUP PLC, and 3i  )
CORPORATION,  )
                     )
        Defendants.  )

Submitted: February 4, 2025
Decided: May 21, 2025

## MEMORANDUM OPINION

*Upon Consideration of Defendants' Motion to Dismiss*;

## GRANTED.

Samuel T. Hirzel, II, Esq.; and Brendan Patrick McDonnell, Esq., of Heyman Enerio Gattuso & Hirzel LLP, *Attorneys for Plaintiff.*

Adam D. Gold, Esq.; and Thomas C. Mandracchia, Esq., of Ross Aronstam & Moritz LLP; Martin L. Roth, Esq.; Katie R. Lencioni, Esq.; and Amanda Lamothe-Cadet, Esq., of Kirkland & Ellis LLP, *Attorneys for Defendants.*

**WINSTON, J.**

## I.    __INTRODUCTION__

Plaintiff S. Christopher Ney initiated this litigation against Defendants 3i Group PLC and 3i Corporation on August 28, 2024, alleging breach of an agreement between Ney and Defendants.  In 2018, Ney served as the CEO of Magnitude and engaged in negotiations with several private equity funds and investment companies concerning a potential sale of Magnitude.  Ney specifically alleges that Defendants made a promise in 2019 to pay him $20 million in exchange for Ney: (1) keeping Defendants at the front of the line during the negotiations process; (2) remaining as CEO after the sale to see Defendants through the post-acquisition period; and (3) building out a revamped company post-acquisition.  Ney brings a claim for breach of contract ("Count I"), or, in the alternative, promissory estoppel ("Count II") and unjust enrichment ("Count III").  The Defendants move to dismiss Ney's Complaint pursuant to Delaware Superior Court Civil Rule 12(b)(6) (the "Motion").

## II.  FACTUAL AND PROCEDURAL BACKGROUND[1]

### A.  RELEVANT FACTS

Plaintiff Christopher Ney co-founded Magnitude, a software firm, in 2014 with the objective to further acquire companies.[2]  Ney also served as the CEO of Magnitude, which had its principal place of business in Travis County, Texas.[3]  In 2018, Magnitude entered negotiations with several private equity funds and investment companies concerning a potential sale of the company.[4]  One of those potential buyers was Defendant 3i Group PLC, an international private equity group.[5]

Ney alleges he negotiated with the Defendants regarding a potential sale throughout 2018 and 2019.[6]  During these negotiations, Ney communicated primarily with Andrew Olinick, who was under the supervision of Simon Borrows,

---

[1] The following facts are drawn from the Complaint and documents incorporated by reference. *Windsor I, LLC v. CW Capital Asset Mgmt. LLC*, 238 A.3d 863, 873 (Del. 2020).  Citations in the form of "Ex. __" refer to documents attached to the Complaint.

[2] Complaint (hereinafter "Compl.") ¶ 14.

[3] Compl. ¶ 14.

[4] Compl. ¶ 15.

[5] Compl. ¶ 15.

[6] Compl. ¶ 15.

the CEO of 3i Group.[7] Olinick held himself out as a 3i Group partner, co-head of North American Private Equity, and Global Head of Business and Technology, but now claims to have been acting on behalf of a related corporation, Defendant 3i Corporation.[8] Because of this, Ney brings his claims against both 3i Group and 3i Corporation (collectively, the "Defendants").

During the negotiations, Olinick repeatedly pressed Ney to put the Defendants at the "front of the line" of the entities negotiating for a possible purchase of Magnitude.[9] Borrows and Olinick told Ney late in the process that although the Defendants had previously committed to a firm purchase price of $360 million, their investment committee now could only commit to a $340 million purchase price.[10] Ney responded to Olinick that $340 million was not acceptable and that Magnitude was going to open negotiations to other interested suitors.[11] In turn, Borrows and Olinick requested that Ney provide exclusivity to the Defendants during the negotiations process.[12]

---

[7] Compl. ¶ 3.

[8] Compl. ¶ 3.

[9] Compl. ¶ 16.

[10] Compl. ¶ 16.

[11] Compl. ¶ 17.

[12] Compl. ¶ 18.

Ney alleges that, during negotiations of the sale of Magnitude, Borrows and Olinick offered to pay Ney $20 million post-closing in exchange for Ney staying on as CEO of Magnitude to steer the new equity group through the post-acquisition period and set Magnitude up for continued growth and success.[13] Ney accepted the Defendants' offer; as agreed, he pushed the negotiations to a successful close;[14] stayed on as Magnitude's CEO; completely revamped the company's management, products, and marketing strategy; and, overall, successfully transitioned the company post-closing.[15] Ney refers to this agreement as the "Post-Closing Agreement."[16]

In March 2019, New Amsterdam Software Holdings purchased Magnitude for $340 million.[17] On or about July 7, 2020, approximately 18 months after the sale

---

[13] Compl. ¶¶ 18-21.

[14] *See* Compl. ¶¶ 7, 16, 18, 23. At times Ney alleges that the Post-Closing Agreement included his promise to keep Defendants "at the front of the line during the negotiations process." Ney alleges that the Post-Closing Agreement was first proposed before the sale of Magnitude was completed, and Ney's Complaint mentions multiple times that Ney performed his promise to Borrows and Olinick to prioritize the Defendants over other potential buyers. Compl. ¶¶ 18, 23. Accordingly, the Court will consider this promise to be a part of the alleged Post-Closing Agreement. Excluding this commitment would not alter the Court's decision.

[15] Compl. ¶¶ 22-23.

[16] Compl. ¶¶ 18-21.

[17] Compl. ¶¶ 5-7, 23; *see also Ney v. 3i Group, P.L.C.*, 2023 WL 6121774, at *2 (5th Cir. Sept. 19, 2023).

5

was completed, Ney was terminated as CEO of Magnitude.[18] Ney alleges that this termination was intentionally timed "after Ney had completed all aspects of his end of the Post-Closing Agreement—and thus right when [the Defendants] would understand that Ney would insist that he be paid the $20 million as promised."[19]

In summary, Ney alleges that the Defendants used Ney and terminated him as CEO of Magnitude shortly before the subsequent sale of the company for a large profit—a sale which, Ney alleges, would not have occurred if it was not for his efforts as CEO.[20]

## B. PROCEDURAL POSTURE

### 1. THE INITIAL ACTION

Ney initially filed suit in a Texas state court against New Amsterdam Software Holdings and New Amsterdam Software GP LLC (collectively the "New Amsterdam Entities"), and 3i Group.[21] The New Amsterdam Entities moved to dismiss based on forum selection clauses in the written contracts between the parties (collectively, the "Transaction Agreements")[22] that unambiguously provided

---

[18] Compl. ¶ 24.

[19] Compl. ¶ 24.

[20] Compl. ¶ 24.

[21] *Ney v. 3i Group, P.L.C.*, 2023 WL 6121774, at *2.

[22] *See id.* The Transaction Agreements are seven fully integrated written agreements governing the sale of Magnitude. D.I. 22 (hereinafter "Op. Br.") at 1. These

Delaware as the exclusive forum for resolving disputes relating to the Magnitude negotiation and purchase.[23]

Although the New Amsterdam Entities noted in their motion to dismiss that the Transaction Agreements would likewise prohibit claims against 3i Group, 3i Group was not subject to the motion to dismiss.[24] Instead, 3i Group had filed a contemporaneous Special Appearance challenging the Texas court's jurisdiction.[25] On October 20, 2020, the Texas state court granted the New Amsterdam Entities' motion to dismiss based upon the forum selection clauses.[26] The only remaining defendant to the action was 3i Group.[27]

---

documents are attached as exhibits to the Defendants' Motion to Dismiss and include: (i) the Stock Purchase Agreement, Ex. 2; (ii) the Restrictive Covenant Agreement, Ex. 3; (iii) two Incentive Grant Agreements, Ex. 4-5; (iv) the Contribution and Subscription Agreement (the "Rollover Agreement"), Ex. 6; (v) the Agreement of Limited Partnership (the "Partnership Agreement"), Ex. 7; and (vi) the Limited Liability Company Agreement, Ex. 8. The Stock Purchase Agreement is incorporated by reference into Restrictive Covenant Agreement and the Rollover Agreement. The Partnership Agreement is incorporated by reference into Exhibits 4, 5, 6, and 8. *See* Op. Br., Ex. 2-8.

[23] *Ney v. 3i Group, P.L.C.*, 2023 WL 6121774, at *2.

[24] *Id*.

[25] *Id*.

[26] *Ney v. 3i Group, P.L.C.*, 2023 WL 6121774, at *2; *see also Ney v. 3i Group, P.L.C.*, 2021 WL 8082411, at *2 (W.D. Tex. Apr. 13, 2021).

[27] *Ney v. 3i Group, P.L.C.*, 2023 WL 6121774, at *2.

Following the Texas state court's dismissal of the New Amsterdam Entities, Ney amended his petition to add 3i Corporation as an additional defendant, bringing the total number of defendants to two: 3i Group and 3i Corporation.[28]  Ney contended that he was owed $20 million under an oral contract and asserted breach of contract, promissory estoppel, and unjust enrichment/quantum meruit claims against the Defendants.[29]  The case was removed to federal court based on diversity and referred to a District Court magistrate for a report and recommendation on dispositive motions.[30]  The Defendants filed their motion to dismiss on December 4, 2020, arguing that Ney's claims should be dismissed because: (1) his pleadings failed to state a claim under Rule 12(b)(6), (2) venue was improper given the various written agreements' forum selection clauses under Rule 12(b)(3), and (3) the court lacked personal jurisdiction over 3i Group.

The magistrate granted the Defendants leave to file a supplemental motion to raise the forum selection clause argument in a *forum non conveniens* posture rather than under Rule 12(b)(3).[31]  After holding oral argument, the magistrate issued a

---

[28] *Id*. at *3.

[29] *Id*.

[30] *Ney v. 3i Group, P.L.C.*, 2021 WL 8082324, at *1 (W.D. Tex. Apr. 30, 2021).

[31] *Ney v. 3i Group, P.L.C.*, 2023 WL 6121774, at *3; *see also Ney v. 3i Group, P.L.C.*, 2021 WL 8082411, at *2.

Report & Recommendation (the "Report") recommending Defendants' supplemental motion to dismiss be granted in accordance with the forum selection clauses in two written agreements—the Stock Purchase Agreement and the Rollover Agreement.[32] Ney objected to the Report.[33] On April 30, 2021, the District Court judge accepted and adopted the Report, dismissing the case without prejudice pursuant to the forum selection clauses in both the Stock Purchase Agreement and the Rollover Agreement.[34]

On May 20, 2021, Ney appealed to the United States Court of Appeals, Fifth Circuit.[35] The Fifth Circuit reviewed: (1) the District Court's interpretation of a forum selection clause and its assessment of that clause's enforceability *de novo*; and (2) the District Court's balancing of the public and private interest factors for abuse of discretion.[36] The Fifth Circuit ultimately determined that the forum selection clause in the Rollover Agreement is mandatory and enforceable.[37] Accordingly, on September 19, 2023, the Fifth Circuit affirmed the District Court's

---

[32] *Ney v. 3i Group, P.L.C.*, 2021 WL 8082324, at *1.

[33] *Ney v. 3i Group, P.L.C.*, 2023 WL 6121774, at *2.

[34] *Id*.

[35] *Ney v. 3i Group, P.L.C.*, 2023 WL 6121774, at *2; *see also Ney v. 3i Group, P.L.C.*, 2023 WL 6121774, Docket No. 21-50431 (5th Cir. May 20, 2021) (Entry No. 1) ("Notice of Appeal filed by Appellant Mr. S. Christopher Ney").

[36] *Ney v. 3i Group, P.L.C.*, 2023 WL 6121774, at *2.

[37] *Ney v. 3i Group, P.L.C.*, 2023 WL 6121774, at *5.

dismissal for *forum non conveniens* without needing to address the question of whether Ney's case fell within the Stock Purchase Agreement's forum selection clause.[38]

### 2. THE INSTANT ACTION

Almost one year later, on August 28, 2024, Ney filed the present Complaint seeking damages for breach of contract ("Count I"), or, in the alternative, promissory estoppel ("Count II") and unjust enrichment ("Count III"), relating to the Defendants' repudiation of their alleged 2019 promise to pay Ney $20 million.[39] Ney acknowledges that he initially brought these claims in Texas state and federal courts, which held that the dispute could only be litigated in Delaware based on a forum selection clause in the Stock Purchase Agreement.[40] He further explains that he does not agree that this dispute is governed by the Stock Purchase Agreement, but brings this action here based on Defendants' position and the Texas courts' decisions.[41]

---

[38] *Id*.

[39] Compl.

[40] Compl. at 4, n.1.

[41] Compl. at 4, n.1.

10

The Defendants move under Delaware Superior Court Civil Rule 12(b)(6) to dismiss all claims asserted in Ney's Complaint.[42] Ney responded on December 16, 2024,[43] and the Defendants replied on January 14, 2025.[44] This Court heard oral argument and reserved its decision on February 4, 2025.[45]

## III. STANDARD OF REVIEW

Upon a Rule 12(b)(6) motion, the Court: (1) accepts all well-pleaded factual allegations as true; (2) credits vague allegations if they give the opposing party notice of the claim; (3) draws all reasonable inferences in favor of the non-moving party; and (4) denies dismissal if recovery on the claim is reasonably conceivable.[46] The Court will grant a motion to dismiss only when "it appears 'with reasonable certainty that, under any set of facts that could be proven to support the claims asserted, the plaintiff would not be entitled to relief.'"[47]

---

[42] Op. Br.

[43] D.I. 25 (hereinafter "Ans. Br.").

[44] D.I. 27 (hereinafter "Reply").

[45] D.I. 30.

[46] *Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holding, LLC*, 27 A.3d 531, 535 (Del. 2011).

[47] *Banner v. Hockessin Chase, L.P.*, 2022 WL 1537382, at *3 (Del. Super. May 12, 2022).

## IV.    ANALYSIS

### A.    PLAINTIFF'S CLAIMS ARE BARRED BY THE STATUTE OF LIMITATIONS, AND THE DELAWARE SAVINGS STATUTE IS INAPPLICABLE TO PLAINTIFF'S CLAIMS.

Defendants contend that Plaintiff's claims cannot be timely, because the relevant statute of limitations provides for a three-year limitation period for breach of contract, promissory estoppel, and unjust enrichment.[48]  Because Ney's claims stem from alleged wrongful conduct in May 2019, Defendants assert they are plainly time-barred by Delaware's three-year statute of limitations.[49]  Further, Defendants argue the Delaware Savings Statute and other tolling doctrines do not apply to make the filing timely.[50]  Defendants specifically allege that Ney cannot take advantage of the Savings Statute or other tolling doctrines where he intentionally disregarded a forum selection clause.

Ney maintains that his claims are timely under the Delaware Savings Statute.[51] Delaware's Savings Statute, 10 *Del. C.* § 8118(a), protects claims from being time-barred where they were timely brought in an incorrect forum.[52]  Ney asserts that

---

[48] Op. Br. at 2 (citing 10 *Del. C.* § 8106).

[49] *Id*.

[50] Op. Br. at 10-11.

[51] Ans. Br. at 2.

[52] 10 *Del. C.* § 8118(a).

12

because the Fifth Circuit affirmed the dismissal of the lower court on September 19, 2023, the instant action, filed in August 2024, is timely.

The Delaware Savings Statute is triggered when the original action is abated.[53] "[A]t common law, an abatement was an overthrow of a suit, the equivalent of a dismissal" and "in equity . . . an interruption or suspension of a suit, the equivalent of a stay of proceedings."[54] Thus, the first question becomes whether Ney's claims were "dismissed or stayed 'for any matter of form,' so as to entitle him to an extra year to re-file that petition."[55]

The undisputed answer is yes. Ney's District Court action was dismissed without prejudice.[56] Thus, his claims were dismissed in a manner that entitled him additional time under the Savings Statute to re-file his petition. The General Assembly designed the Savings Statute "to mitigate against the harshness of the defense of limitations raised against a plaintiff who, *through no fault of his own* finds his cause technically barred by the lapse of time."[57] Delaware courts, however,

---

[53] *Rogers v. iTy Labs Corp*, 2022 WL 985536, at *6 (Del. Ch. Mar. 31, 2022) (citing *Parker v. Gadow*, 2005 WL 1952938, at *1 (Del. Super. Aug. 5, 2005), *aff'd*, 893 A.2d 964 (Del. 2006)).

[54] *Id*. (quoting *Graleski v. ILC Dover*, 26 A.3d 213 (Del. 2011)).

[55] *Id*.

[56] *Ney v. 3i Group, P.L.C.*, 2023 WL 6121774, at *3.

[57] *Id*. (quoting *Giles v. Rodolico*, 140 A.2d 263, 267 (Del. 1958)) (emphasis in original).

recognize that where a litigant disregards or strategically tries to avoid an applicable forum selection clause, the Savings Statute does not apply.[58]

Ney elected to file suit in Texas state court against the New Amsterdam Entities and 3i Group.[59]  On the New Amsterdam Entities motion to dismiss, the court informed Ney that his claims against the New Amsterdam Entities were subject to the forum selection clauses within the Stock Purchase Agreement and the Rollover Agreement, because the claims were brought against parties to the Transaction Agreements and directly related to the sale of Magnitude.[60]  Instead of filing his claim against the New Amsterdam Entities in Delaware, Ney amended his Complaint to add another Defendant who was *not a signatory* to the Transaction Agreements.[61]

After removal to federal court, the Texas District Court dismissed the action against the Defendants without prejudice pursuant to the forum selection clauses in both the Stock Purchase Agreement and the Rollover Agreement.[62]  The District

---

[58] *Tilden v. Cunningham*, 2018 WL 5307706, at *15 (Del. Ch. Oct. 26, 2018) (holding that plaintiff's claims were barred by laches where he first filed elsewhere despite a Delaware forum selection clause "because any harm [he] has suffered [wa]s entirely self-inflicted.")

[59] *Ney v. 3i Group, P.L.C.*, 2023 WL 6121774, at *2.

[60] *Id*.

[61] *Id*. at *3.

[62] *Id*.

Court held that, despite being non-signatories to the Rollover Agreement, "[the Defendants] may enforce the Rollover Agreement's forum-selection clause against Ney" because "enforcement [by a non-signatory] is permitted if the relationship between a non[-]signatory and a signatory to the contract is close enough that the non[-]signatory's enforcement of the forum-selection clause would be 'foreseeable' to the opposing party."[63] Thus, although Ney continues to maintain that he has not sued under any Transaction Agreement, the Texas state and federal courts previously determined that the Stock Purchase Agreement's and the Rollover Agreement's mandatory forum selection clauses apply to his claims.[64]

After receiving the District Court's decision that his claims against the Defendants fell within the forum selection clauses in the Stock Purchase Agreement and the Rollover Agreement, Ney's claims, if brought in Delaware, would have been

---

[63] *Ney v. 3i Group PLC*, 2021 WL 8082411, at *3.

[64] Ney admits that his Texas state and federal court claims are the same as the claims in the subject litigation. Ans. Br at 13. Because Ney admits that his claims are the same as his claims in the Texas actions, the issue of judicial estoppel is moot. *See* Reply at 7, n.4 ("Since Plaintiff has now confirmed that he is bringing the same claims as he did in Texas, the Court need not address Defendants' judicial estoppel arguments.").

timely.[65]  Yet, Ney still did not file his claim in the proper jurisdiction.[66]  Instead, he chose to appeal the decision.[67]  The Fifth Circuit ultimately affirmed the District Court's dismissal and found the forum selection clause in the Rollover Agreement mandatory and enforceable.[68]

Ney was on notice that his claims against the Defendants were subject to the forum selection clauses within the Stock Purchase Agreement and the Rollover Agreement as early as April 30, 2021.[69]  Ney could have hedged his bet by filing in Delaware immediately after the District Court dismissed his suit.[70]  Instead, he went "all in" and pursued an appeal rather than filing a claim within the statute of limitations in the forum he contractually agreed to.[71]  Despite being on notice, he

---

[65] *Ney v. 3i Group PLC*, 2021 WL 8082411, at *3.  Because Ney's claims concern an alleged oral agreement made in 2019, the statute of limitations for Ney's claims expired in 2022.

[66] *Id*.

[67] *Id*.

[68] *Id*. at *5.

[69] *Ney v. 3i Group PLC*, 2021 WL 8082324, at *1; *see also Ney v. 3i Group PLC*, 2021 WL 8082411, at *3.

[70] *See Huffington v. T.C. Group, LLC*, 2012 WL 1415930, at *9.

[71] *See id*. (noting that such facts indicated that [plaintiff] "did forum shop. He tried to avoid the clear and unambiguous forum selection clause by filing in Massachusetts. He clearly sought to avoid litigating his claims here.")

chose a strategy that backfired.[72] Thus, in this circumstance, it is inappropriate to apply the Delaware Savings Statute to save him from the consequences of his strategic decisions.[73]

For these reasons, as a matter of law, Delaware's three-year statute of limitations applies, barring Ney's claims regarding the alleged Post-Closing Agreement made in 2019.

### B. CERTAIN TRANSACTION AGREEMENTS PRECLUDE NEY'S POST-CLOSING AGREEMENT CLAIMS.

Even if Ney's claims were not time-barred, the Stock Purchase Agreement, the two Incentive Grant Agreements, and the Rollover Agreement preclude Ney's claims. Defendants separately argue that the Post-Closing Agreement claims are precluded by the Transaction Agreements.[74] Specifically, the Defendants argue that: (i) the Transaction Agreements apply to the Post-Closing Agreement;[75] and (ii) the fully-integrated Transaction Agreements preclude Plaintiff's claims.[76]

---

[72] *Huffington v. T.C. Group, LLC*, 2012 WL 1415930, at *10; *see also Saudi Basic Indus. Corp. v. Mobil Yanbu Petrochemical Co.,* 2003 WL 22016864, at *1 (Del. Super. Aug. 26, 2003) (noting that the plaintiff "made a conscious, strategic decision to file this case here . . . That risky strategy backfired, miserably, and now . . . [Plaintiff] cries foul . . . .").

[73] *Huffington v. T.C. Group, LLC*, 2012 WL 1415930, at *10.

[74] Op. Br. at 11.

[75] Op. Br. at 15.

[76] Op. Br. at 19.

17

**1. THE COURT MAY CONSIDER THE STOCK PURCHASE AGREEMENT, THE INCENTIVE GRANT AGREEMENTS, AND THE ROLLOVER AGREEMENT.**

Ney generally contends that the Transaction Agreements are "matters outside of the [C]omplaint" and, as a result, cannot be considered by the Court in ruling on this Motion.[77] Ney specifically argues that the Transaction Agreements: (1) were inappropriately attached by Defendants to prove the truth of the pleadings' contents;[78] and (2) cannot be integral to his claims "when he is expressly not bringing any claims under them."[79]

Defendants assert that the Court can consider the Transaction Agreements because they are incorporated by reference into the pleadings and integral to Ney's claims.[80] Defendants separately argue that, because the same Post-Closing Agreement was at issue in the Texas litigation, Ney is collaterally estopped from arguing that the Transaction Agreements do not apply to the Post-Closing Agreement in this case.[81] Accordingly, the Court must first determine whether the Transaction Agreements may be considered.

---

[77] Ans. Br. at 14.

[78] Ans. Br. at 16-17.

[79] Ans. Br. at 16.

[80] Op. Br. at 16.

[81] Op. Br. at 15.

18

### 2. THE STOCK PURCHASE AGREEMENT, THE INCENTIVE GRANT AGREEMENTS, AND THE ROLLOVER AGREEMENT ARE INCORPORATED INTO THE COMPLAINT BY REFERENCE AND INTEGRAL TO PLAINTIFF'S CLAIMS.

In deciding a motion to dismiss, courts generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record.[82] When parties present positions and reference materials neither incorporated into nor integral to the complaint, the Court may convert the motion to one for summary judgment.[83] However, this will not occur if the additional materials are incorporated into the complaint by reference and integral to the claims of the complaint or the materials are not being relied upon to prove the truth of the contents.[84] Defendants assert, among other things, that the Court can properly consider the Transaction Agreements because the following facts establish the Transaction Agreements are integral to Ney's claims: (1) the Stock Purchase

---

[82] *Sweetwater Point, LLC v. Kee*, 2020 WL 6561567, at *5 (Del. Super. Nov. 5, 2020) (internal citations omitted).

[83] *Driggus v. State Farm Mut. Auto. Ins. Co.*, 2023 WL 7599490, at *1 (Del. Super. Nov. 15, 2023).

[84] *Cambridge Strategic Mgmt. Grg. v. IDT Domestic Telecom, Inc.*, 2013 WL 2480887, at *3 (Del. Super. Apr. 8, 2013).

Agreement and the equity plan[85] are referenced in the Complaint; and (2) the Transaction itself was referenced in over a third of the Complaint.[86]

Whether a document is incorporated into a complaint and integral to a claim is largely a facts-and-circumstances inquiry.[87] In *Fortis Advisors LLC v. Allergan W.C.*, the Court of Chancery held a document is integral to a claim if it is the source for the facts as pled in the complaint.[88] There, as here, the plaintiff conceded that it referenced some of the defendant's exhibits in its Amended Complaint, but contended that those documents were not integral to its breach of contract claim.[89] The Court found that the plaintiff "use[d] these referenced documents to form the *factual foundation* for its claim, and therefore that they [were] integral to the claim."[90]

While Ney contends the obligations under the Post-Closing Agreement were not part of the Magnitude sale, his Complaint references the sale[91]—an acquisition

---

[85] Op. Br. at 16. Ney's "equity plan," referenced in the Complaint, was memorialized in the two Incentive Grant Agreements. *See* Compl. ¶ 19; *see also* Incentive Grant Agreements.

[86] Op. Br. at 16.

[87] *In re Gardner Denver, Inc.*, 2014 WL 715705 at *3 (Del. Ch. Feb. 21, 2014).

[88] 2019 WL 5588876, at *3 (Del. Ch. Oct. 20, 2019).

[89] *Id.*

[90] *Id.* (emphasis added).

[91] Compl. ¶¶ 4, 5, 6, 16, 17, 18.

which is undisputedly governed by the Stock Purchase Agreement. Similarly, Ney's references to his post-closing employment and compensation[92] are governed by the two Incentive Grant Agreements. The Complaint also references the Texas courts' decisions finding the applicability of the forum selection clause.[93] Additionally, these Agreements are integral to Ney's Post-Closing Agreement claims. Ney's claims are based on his assertion that Defendants breached the oral agreement whereby Defendants promised to compensate Ney for keeping Defendants in the front of the line of during negotiations which Ney asserts occurred because Ney fulfilled his promise during the negotiation process. These claims rely on the Stock Purchase Agreement, which evidences the sale of Magnitude. Ney was also promised compensation for staying on as CEO of Magnitude to steer the new equity group through the post-acquisition period to set Magnitude up for continued growth and success working through the negotiations to a successful close. This alleged promise—a vital component of Ney's claims—is memorialized in the two Incentive Grant Agreements and the Rollover Agreement, agreements that Ney signed.

---

[92] *Id*. ¶¶ 7, 8, 18, 19, 20, 21.

[93] Compl. ¶ 13, n.1. Ney does not mention that the District Court's determination also hinged on the Rollover Agreement's forum selection clause. The District Court held that the Stock Purchase Agreement and the Rollover Agreement *both* contained mandatory and enforceable forum selection clauses which covered all Ney's claims. *See Ney v. 3i Group PLC,* 2021 WL 8082411, at *11-12.

The foundation of Ney's Post-Closing Agreement claims relates to the sale of Magnitude, including his post-closing employment and compensation, through the executed Stock Purchase Agreement, the Incentive Grant Agreements, and the Rollover Agreement. Stated differently, the Complaint's factual basis flows from these Agreements,[94] and these Agreements are the source of the facts pled.[95] This litigation would not exist without these Agreements and the actions taken under these Agreements.

Accordingly, the Court can consider the Stock Purchase Agreement, the Incentive Grant Agreements, and the Rollover Agreement, as they are integral to the Complaint and incorporated by reference, without converting the Motion to a motion for summary judgment.[96]

---

[94] *Massandra Cap. IV, LLC v. CEAI Aspen Place Manager, LLC*, 2024 WL 3411813, at *4 (Del. Super. July 15, 2024) (agreement was integral to a plaintiff's claim where the "litigation's factual basis flow[ed] from" the agreement defendant attached to their motion to dismiss).

[95] *Orman v. Cullman*, 794 A.2d 5, 16 (Del. Ch. 2002) (concluding a proxy statement was "integral to [a] complaint as it [was] the source for the merger-related facts as pled in the complaint").

[96] The Court does not and need not consider the six other Transaction Agreements.

### 3. COLLATERAL ESTOPPEL FORECLOSES NEY'S CONTENTION THAT THE STOCK PURCHASE AGREEMENT AND THE ROLLOVER AGREEMENT DO NOT APPLY.

In addition, collateral estoppel forecloses any argument that the Stock Purchase Agreement and the Rollover Agreement do not apply to the Post-Closing Agreement. In Delaware, "[j]udgments by other courts, both state and federal, must be given the same force and effect in this Court as they would be given in the 'rendering court.'"[97] The law of the jurisdiction in which the initial case was dismissed controls whether collateral estoppel applies.[98] The initial case jurisdiction is the Western District of Texas, thus federal issue preclusion law under Fifth Circuit precedent applies.[99]

In the Fifth Circuit, collateral estoppel applies if: "(1) the identical issue was previously adjudicated; (2) the issue was actually litigated; and (3) the previous determination was necessary to the decision."[100] The District Court determined that the Stock Purchase Agreement and the Rollover Agreement applied to Plaintiff's

---

[97] *Asbestos Workers Loc. 42 Pension Fund ex rel. JPMorgan Chase & Co. v. Bamman*, 2015 WL 2455469, at *15 (Del. Ch. May 22, 2015).

[98] *Pyott v. La. Mun. Police Emps.' Ret. Sys.*, 74 A.3d 612, 614, 616-17 (Del. 2013).

[99] *See Ney v. 3i Group, P.L.C.*, 2021 WL 8082411.

[100] *Bradberry v. Jefferson Cnty., Tex.*, 732 F.3d 540, 548 (5th Cir. 2013) (internal citations omitted).

Post-Closing Agreement.[101]   More, Ney himself admits his Texas state and federal court claims are the *same* as the claims in the subject litigation.[102]   Ney's concession leads to the preclusive effect of the Texas courts' rulings that the Stock Purchase Agreement and the Rollover Agreement apply to Ney's claims and binds Ney.[103]

### 4.   THE FULLY-INTEGRATED STOCK PURCHASE AGREEMENT PRECLUDES NEY'S COMPLAINT.

Now that the Court has determined that the Stock Purchase Agreement, the Incentive Grant Agreements, and the Rollover Agreement may be considered, the Court addresses whether these Agreements bar Ney's Complaint.    These Agreements, which generally refer to one another, have integration clauses that state that the respective contracts "contain the complete agreement by, between and among the parties and supersede any prior understandings, agreements or representations by, between or among the parties, written or oral, which may have related to the subject matter hereof in any way."[104]   The Incentive Grant Agreements further provide that "[n]o modification, amendment or waiver of any provision . . .

---

[101] The District Court expressly held that Ney's Texas complaint "sufficiently implicate[d] the underlying written agreements" and that "Ney's claims unequivocally f[e]ll within the scope of the Rollover Agreement." *See Ney v. 3i Group, P.L.C.*, 2021 WL 8082411 at *8, n.13, *11.

[102] Ans. Br. at 13 (emphasis added).

[103] *See Asbestos Workers Loc. 42 Pension Fund ex rel. JPMorgan Chase & Co. v. Bamman*, 2015 WL 2455469, at *15.

[104] Stock Purchase Agreement § 12.09.; *see also* Incentive Grant Agreements § 7.

24

shall be effective . . . unless such modification, amendment or waiver is approved in writing . . . ."[105]

Where, as here, integration clauses preclude separate oral or written agreements, claims based on any alleged separate agreement must be dismissed.[106] Accordingly, Ney's claims are also barred by the integration and no oral amendment clauses.

More, Ney cannot circumvent this preclusive effect through alternative quasi-contract claims. Unjust enrichment and promissory estoppel do not apply "where a fully integrated, enforceable contract governs the promise at issue."[107] As the Court noted, the Stock Purchase Agreement, Incentive Grant Agreements, and Rollover Agreement govern the subject matter of Ney's alleged Post-Closing Agreement.[108] Accordingly, Ney's claims for promissory estoppel and unjust enrichment fail as a matter of law.

---

[105] Incentive Grant Agreements § 7.

[106] *Black Horse Cap., LP v. Xstelos Hldgs., Inc.,* 2014 WL 5025926, at *24 (construing the integration clauses of transaction agreements "to indicate that there were no separate oral contracts regarding the subject matter of those Agreements, and that there was no separate consideration or inducement for entering into those Agreements").

[107] *Neurvana Med., LLC v. Balt USA, LLC*, 2020 WL 949917, at *21 (Del. Ch. Feb. 27, 2020); *Black Horse Cap., LP v. Xstelos Hldgs., Inc.,* 2014 WL 5025926, at *26 (Del. Ch. Sept. 30, 2014).

[108] *See* discussion *supra* Section IV.B.2-3.

## V.     CONCLUSION

Ney consciously ignored the forum selection clause within the parties' written agreements and filed his claim in another jurisdiction.  In this circumstance, it is inappropriate to apply the Delaware Savings Statute to save Ney from the consequences of his strategic decisions.  Further, even if timely filed, any claims regarding the alleged Post-Closing Agreement are precluded by the fully-integrated Stock Purchase Agreement, the Incentive Agreements, and the Rollover Agreement.

Accordingly, the Court **GRANTS** Defendants' Motion and dismisses Plaintiff's Complaint with prejudice.

**IT IS SO ORDERED.**

*/s/ Patricia A. Winston*
**Patricia A. Winston, Judge**